## KIDWELL v. ZERBST, Warden.

### No. 1192.

District Court, N. D. Georgia.
May 13, 1937.

Paul Crutchfield, of Atlanta, Ga., for petitioner.

H. H. Tysinger and H. T. Nichols, Asst. U. S. Attys., both of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

Petitioner was sentenced on September 27, 1932, in the United States District Court for the Eastern District of Kentucky, to serve a term of two years in a penitentiary or prison camp for violation of the National Prohibition Act (27 U.S.C.A. § 1 et seq.).

He was released on parole on August 27, 1933, and was declared to be a parole violator on June 18, 1934. On the latter date, June 18, 1934, a warrant was issued by the Chairman of the United States Board of Parole, which stated:

. "And whereas, satisfactory evidence having been presented to the undersigned Member of this Board that said paroled prisoner named in this warrant has violated the conditions of his parole, the same is hereby revoked and the said paroled prisoner is declared to be a fugitive from justice.

"Now, therefore, this is to command you to execute this warrant by taking the said Sherman Kidwell, wherever he is found in the United States, and him safely return to the institution hereinafter designated."

No institution was designated in the warrant, but there were added thereto the words: "When apprehended communicate with Director, Bureau of Prisons for instructions." On June 11, 1935, petitioner was indicted, with others, in the same court for violating the Liquor Taxing Act of 1934, 48 Stat. 313, and was sentenced by said court on June 29, 1935, the sentence being in the following language: "This cause coming on for sentence, the defendants having nothing further to say, are each sentenced to be committed to the custody of the Attorney General, or his authorized representative for confinement in an institution of the Reformatory or Penitentiary type for a period of Two (2) Years at Hard Labor, and they are now committed."

Petitioner was committed on the same day to jail pending transfer to the United States Industrial Reformatory at Chillicothe, where he was received on July 12, 1935. He was subsequently transferred to the Atlanta Penitentiary, where he was received on August 23, 1935.

On January 25th, 1936, the Parole Executive wrote the Warden of the Penitentiary at Atlanta the following letter:

"Mr. A. C. Aderhold,
"Warden, U. S. Penitentiary,
"Atlanta, Georgia.
"Attention: Parole Officer.
"In re: Sherman Kidwell,
"Reg. No. 46682-A. ZW
"Dear Sir:

"Enclosed herewith is parole violator warrant in duplicate and copy of referral for consideration of alleged violation in the case of the above named man who is now serving a new sentence in your institution.

"Please place the warrant as a detainer and take Kidwell into custody on the warrant at the expiration of his present sentence. The case should be listed for a hearing on the violation charge only after Kidwell is in custody on the warrant.

"When you have executed the warrant return it to this office stating specifically that you are holding Kidwell as a violator and on the original commitment."

The record shows, therefore, that petitioner has been held under two sentences of

the same court, in the same penitentiaries (at Chillicothe and Atlanta) from July 12, 1935, until January 21, 1937, when his second sentence expired, and from January 21, 1937, until the present time solely under the parole warrant and the letter of the Parole Executive.

When petitioner was declared to be a parole violator, he had 395 days to serve on the first sentence. If, therefore, the first sentence began to run again when he was returned to the penitentiary and ran concurrently with the second sentence, then petitioner has completed the service of both sentences and is now being illegally held and should be discharged.

■ The Circuit Court of Appeals for the Fifth Circuit, in the case of Aderhold v. McCarthy, 65 F.(2d) 452, said, in commenting upon sentences without any provision for one sentence to follow the other, even where the sentences were imposed by different courts, that: "Each was imposed by authority of the United States, and was to be executed in the Atlanta penitentiary. There being nothing to prevent, each would begin to run on his arrival there, and he would be entitled to discharge at the expiration of the longest term."

This seems to be the settled law. Zerbst v. Lyman (C.C.A.5th) 255 F. 609, 5 A.L.R. 377; White v. Kwiatkowski (C.C.A.10th) 60 F.(2d) 264; Aderhold v. McCarthy (C.C. A.5th) 65 F.(2d) 452.

The fact that the first sentence was, at the time of parole, being served in a different institution, is, as held by the Circuit Court of Appeals for the Tenth Circuit, in White v. Kwiatkowski, 60 F.(2d) 264, 265, wholly immaterial for, as the court said: "To hold otherwise is to hold the Attorney General may by transfer to the reformatory change concurrent to consecutive sentences; but he had no such judicial power." The court further said in this case: "The new Board [Parole Board] had no power to return appellee to Chillicothe, and did not attempt to do so. The remainder of the first sentence was served at Leavenworth, and it was satisfied."

In the McCarthy Case the Circuit Court of Appeals for the Fifth Circuit held that the two sentences ran concurrently, although, as shown by the record, it was strongly contended that they should not because the sentences were imposed in different courts and in different states and be-

cause petitioner was never actually confined in a penitentiary under the commitment issued in one case, until after he had served his sentence in the other.

The case at bar presents even stronger grounds for the release of the prisoner than the McCarthy Case, since here the sentences were imposed by the same court without providing that the cases should run consecutively, with full information of the previous sentence, either actual or readily obtainable from the United States attorney under the present practice in United States courts.

Since the trial court did not make the sentences run consecutively, they must be held to run concurrently.

For stronger reasons, sentences could not be made to run consecutively by the mere act of the Parole Board.

■ The respondent contends that the parole has never been revoked. There was no evidence in this case to this effect, other than the above-quoted letter of the Parole Executive, and the warrant itself recites that the parole was revoked. However, I do not think this material, since petitioner's first sentence began to run again the moment he was received at the penitentiary, and the failure of the Parole Board to comply with the law requiring it, "at the next meeting of the Board of Parole held at said prison after the issuing of the warrant for the retaking of any paroled prisoner" to grant a hearing and • "then or any time in its discretion make an order to terminate said parole," would not operate to exclude from the computation of the sentence the time the prisoner was actually in the institution after his arrest and return to the custody of the United States, whether the parole was revoked or not. The fact he was also held under a commitment upon a concurrent sentence would make no difference. The law plainly contemplates that only the time the prisoner was on parole and not held under a sentence, that must be served in a different institution, should be excluded from the computation of the sentence. 18 U.S.C. A. § 719. Otherwise the Parole Board, by either intentional or negligent omission to exercise its discretion to terminate the parole, which discretion must be a reasonable one, might indefinitely increase the sentence imposed. In this case the increase would be more than a year. Not even a court has the power to increase a sentence after it is once imposed, so certain-

ly the Parole Board, which has no power to impose sentences, could not do so.

The illegality of the action of the Parole Board would be strikingly illustrated if, in the present instance, there had been no second sentence and petitioner had been returned to the penitentiary and left there for two years before the revocation of his parole was considered, and then compelled, thereafter, upon a formal revocation of the parole, to serve the 395 days claimed to be left of his first sentence.

The second sentence, being under the law concurrent, did not affect the running of the first sentence, and the result, so far as the first sentence is concerned, would be the same as if there had been no second sentence.

I am of opinion, therefore, that petitioner's first sentence began to run again when he was received at the United States Reformatory at Chillicothe, Ohio, on July 12, 1935, as shown by the Marshal's return on the commitment issued upon the second sentence.

Whereupon it is considered, ordered, and adjudged that the writ of habeas corpus be and is hereby sustained, and that respondent discharge petitioner from custody at the expiration of three days from this date, which time is allowed for taking an appeal, if desired.