ZERBST, WARDEN, *v.* KIDWELL.*

No. 782. Argued April 27, 1938.—Decided May 16, 1938.

---

* Together with No. 783, *Zerbst, Warden,* v. *Smith;* No. 784, *Same* v. *Collins;* No. 785, *Same* v. *Owens;* No. 786, *Same* v. *Peel;* No. 787, *Same* v. *Jones;* No. 788, *Same* v. *Stone;* and No. 789, *Same* v. *Sullivan,* also on writs of certiorari to the Circuit Court of Appeals for the Fifth Circuit.

Mr. *Bates Booth* argued the cause, and *Solicitor General Jackson, Assistant Attorney General McMahon,* and *Mr. W. Marvin Smith* were on a brief, for petitioner.

Mr. *J. F. Kemp* submitted on brief for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

Respondents were paroled before completing sentences in federal prisons.[1]  Before expiration of their sentences and while on parole, they committed second federal offenses, for which they were convicted, sentenced, and thereafter completely served sentences in the Atlanta Penitentiary.  Respondents contend that, from the moment of their imprisonment in the Penitentiary under the second sentences, they also began service of the unexpired part of their original sentences.  If this contention is correct respondents have also completely served the unexpired parts of the first sentences.

Petitioner contends, however, that when respondents violated their paroles by committing the second federal crimes, they were no longer in custody under the first sentences; service of the first sentences was interrupted and suspended and was not resumed before completion of service of the second sentences; and that after completion of the second sentences, the Board of Parole has authority to require completion of the first sentences, service of which ceased due to the interruption by parole violations.

---

[1] Some were released with credit for good conduct but are treated as on parole until their maximum terms have expired.  18 U. S. C., c. 22, § 716 (b).

After completion of service of the second sentences, respondents were held in custody by the warden of the Penitentiary under warrants of a member of the Board of Parole alleging violations of parole. The District Court, believing the first sentences "began to run again the moment . . . [respondents were] received at the Penitentiary," discharged respondents from custody on habeas corpus proceedings.[2] The Court of Appeals affirmed.[3] Due to the importance of the question involved, we granted certiorari.[4]

When respondent committed a federal crime while on parole, for which he was arrested, convicted, sentenced and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were "analogous to those of an escaped convict."[5] Not only had he—by his own conduct—forfeited the privileges granted him by parole, but since he was no longer in either actual or constructive custody under his first sentence, service under the second sentence can not be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system.

The Parole Board and its members have been granted sole authority to issue a warrant for the arrest and return to custody of a prisoner who violates his parole.[6] A member of the Board ordered that respondent be taken into custody *after* completion of the second sentence.

---

[2] 19 F. Supp. 475. Respondents filed separate petitions for habeas corpus raising substantially identical issues, which will be treated together here, and the respondents will be dealt with as one.

[3] 92 F. 2d 756.

[4] 303 U. S. 632.

[5] *Anderson* v. *Corall*, 263 U. S. 193, 196; 197.

[6] 18 U. S. C., c. 22, § 723 (c).

Until completion of the second sentence—and before the warrant was served—respondent was imprisoned only by virtue of the second sentence. There is, therefore, no question as to concurrent service of sentences, unless—as respondent contends—§ 723 (c) [6] required that the unexpired part of respondent's first sentence begin when he was imprisoned under the second sentence. That section provides:

" . . . The Board of Parole . . . or any member thereof, shall have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve."

Obviously, this provision does not require that a parole violator's original, unexpired sentence shall begin to run from the date he is imprisoned for a new and separate offense. It can only refer to reimprisonment on the original sentence under order of the Parole Board.

Since service of the original sentence was interrupted by parole violation, the full term of *that* sentence has not been completed. Just as respondent's own misconduct (parole violation) has prevented completion of the original sentence, so has it continued the authority of the Board over respondent until that sentence is completed and expires. Discretionary authority in the Board to revoke a parole *at any time before expiration of a parolee's sentence* was provided—and is necessary—as a means of insuring the public that parole violators would be punished.[7] The proper working of the parole system re-

---

[6] 18 U. S. C., c. 22, § 723 (c).

[7] The parole system was intended to make parole discretionary "and revocable at any time . . . [the parole authority] may elect to revoke it," Cong. Rec., Vol. 45, p. 6374. ". . . the prisoner is under

quires that the Board have authority to discipline, guide and control parole violators whose sentences have not been completed. It is not reasonable to assume that Congress intended that a parolee whose conduct measures up to parole standards should remain under control of the Board until expiration of the term of his sentence, but that misconduct of a parole violator could result in reducing the time during which the Board has control over him to a period less than his original sentence.

Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board.[8] Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offence committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified. If the parole laws should be construed as respondent contends, parole might be more reluctantly granted, contrary to the broad humane purpose of Congress to grant relief from imprisonment to deserving prisoners.[9]

Respondents have not completed service of their original sentences and were not entitled to release. The causes

---

the absolute control of that board, and he may be apprehended and returned at any time on violation of his parole. *Those are the safeguards for the benefit of society.*" *Id.*, p. 6377.

The governing Act expressly provides that: ". . . if said [retaken] prisoner shall have been returned to said prison, he shall be given an opportunity to appear before the Board of Parole, and the Board may then, or *at any time in its discretion,* revoke the order and terminate such parole or modify the terms and conditions thereof. . . ." (Italics supplied.) 18 U. S. C., c. 22, § 719.

[8] See Cong. Record, Vol. 45, p. 6374; *United States* v. *Murray,* 275 U. S. 347, 357.

[9] Cf., *United States* v. *Farrell,* 87 F. 2d 957, 961.

are reversed and remanded to the District Court for proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of these cases.