**ROGOWAY v. WARDEN, United States Penitentiary, McNeil Island, Wash.**

No. 9827.

Circuit Court of Appeals, Ninth Circuit.

Oct. 20, 1941.

Rehearing Denied Dec. 12, 1941.

Ted Rogoway, in pro. per.

J. Charles Dennis, U. S. Atty., and Frank Hale, Asst. U. S. Atty., both of Tacoma, Wash., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant Ted Rogoway was convicted of violation of the Harrison Narcotic Law, 44 Stat. 96, 26 U.S.C.A. Int.Rev.Code, §§ 2550 et seq., 3220 et seq., and sentenced by the District Court of the United States for the District of Oregon on February 2, 1935, and his term began on that date, to imprisonment for a term of five years and adjudged to pay a fine of $1,000 on each of the two counts of the indictment under which he was tried, the sentences to run concurrently. Subsequently, on September, 15, 1937, Rogoway was released on parole from the United States Penitentiary at Leavenworth, Kansas, and he returned to Portland, Oregon, where he reported to a probation officer. On November 20, 1939, the United States Board of Parole, 18 U.S. C.A. § 723a, under the signature of its chairman, issued its warrant, 18 U.S.C.A. § 723c, for the arrest of Rogoway, which warrant stated reliable information had been presented a member of the parole board that the paroled prisoner named therein had violated the conditions of his parole, and commanded his apprehension and arrest. Arrest of appellant was made by the United States Marshal, 18 U.S.C.A. § 718, in Portland, Oregon, on authority of the warrant issued, on December 5, 1939, and Rogoway was returned to custody at McNeil Island Penitentiary. On December 14, 1939, a hearing was conducted by an Assistant Parole Officer at McNeil Island Penitentiary, wherein Rogoway was informed of the reason for revocation of his parole and was permitted to explain or excuse his conduct. May 6, 1940, the United States Board of Parole entered its order revoking the parole and directing that he serve the remainder of his sentence originally imposed, and the order was transmitted to the Warden of the Penitentiary.

On November 27, 1940, the appellant filed a petition for writ of habeas corpus in the court below, alleging that he had not violated the conditions or terms of his parole; that no valid inquiry had been conducted for the purpose of determining this question; that he had not committed the acts asserted to be in violation of the terms of his parole; that his employment had been approved by a parole officer; that he was being held "in violation of his constitutional rights." An order to show cause, dated December 16, 1940, was issued, directed to the respondent Warden, which, among other recitals, stated, "that

the respondent is not required to bring the petitioner personally before the court in connection with the hearing on this order to show cause," and an attorney was appointed to represent the petitioner. Thereafter, on March 21, 1941, the court below, of its own motion, granted a rehearing of the petition for writ of habeas corpus and directed the warden of the penitentiary to bring the petitioner before it for hearing. A hearing was had on the day designated, at which the petitioner and his counsel were present, and testimony, including that of the petitioner, taken; the matter was argued and submitted; and the court thereupon denied the petition. Decree of dismissal was entered as were findings of fact and conclusions of law. The petitioner appeals from the order of dismissal.

Upon being granted his parole Rogoway returned to Portland, Oregon, where he took up work in a service station, which extended for a period of approximately two months, when by reason of change of ownership of the establishment, the services of the help were terminated. He then became employed, whether on his own or for another does not appear, as a salesman or peddler of ladies ready-to-wear clothing, having for his territory houses of prostitution, and for his customers, the inmates thereof. Although, obviously, this sort of work would bring him in contact with persons of questionable reputation and subject him to an environment not calculated to accelerate the moral uplift of a parolee, Rogoway testified his parole adviser approved of it. There was testimony, however, to the effect that the parole adviser did not give permission to the appellant to engage in that enterprise. The Portland probation office first reported unfavorably on the appellant on October 11, 1938, when a report was submitted to the Parole Executive that Rogoway had offered an unemployed waitress work as clothes model, induced her to go to his office and there encouraged her to enter a house of prostitution. Charges against him were dropped after the complainant refused to testify against him. A year later, November 10, 1939, the office submitted another report alleging violation of the conditions of his parole by Rogoway. On this occasion it was asserted that Rogoway had met a girl at a beer parlor of ill repute in Portland and transported her to a house of prostitution in Astoria, Oregon, where she engaged in prostitution;

that he had visited her at least twice at this place and collected her earnings. At the court hearing Rogoway offered excuses and attempted to explain away the first complaint. He also attempted to cleanse the Astoria incident of wrongful implications by testifying that, believing the girl to be an entertainer, he had accepted $5 in payment for transporting her from Portland to Astoria; that he did not enter the house with her; that his calls upon her at that place were for the purpose of selling her clothing and collecting therefor. He also submitted an affidavit of the girl to the same effect.

The appellant contends that the Parole Board was without jurisdiction, power, or authority to revoke his parole and that its action was therefore void. He argues that his sentence of imprisonment expired February 1, 1940, and that the Board of Parole was therefore without jurisdiction to enter an order of revocation after that date, and rests his case in this argument.

The statutes governing the revocation of parole provide that a prisoner sentenced after June 29, 1932, when paroled, shall continue on parole until the expiration of the maximum term or terms specified in his sentence, without deduction of allowance for good conduct. 18 U.S.C.A. § 716a. He may be retaken by warrant issued by a member of the board of parole, if such person shall have reliable information that the prisoner has violated his parole. 18 U.S.C.A. §§ 717, 723c. The law further provides, 18 U.S.C.A. § 723c, that: "The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve." Moreover, the law provides that, after the prisoner has been retaken, he shall be given opportunity to appear and the Board may then, or at any time in its discretion, revoke and terminate the parole or modify the conditions thereof, and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced. 18 U.S.C.A. § 719.

Inasmuch as the prisoner was retaken December 5, 1939, and his sentence would not expire before February 1 or 2, 1940, no complaint may be heard on that score. The issuance of the warrant for arrest was not improper for, as outlined

above, the Parole Board was possessed of some information the reliability of which was within its determination (Christianson v. Zerbst, Warden, 10 Cir., 89 F. 2d 40, 42), and conclusive so far as this proceeding is concerned. The violation of the parole interrupted the service of the sentence and reduced the prisoner to the status of an escaped convict. Anderson, Warden, v. Corall, 263 U.S. 193, 196, 44 S. Ct. 43, 68 L.Ed. 247. In such circumstances, the time the prisoner was on parole does not diminish the time the prisoner was originally sentenced to serve. 18 U.S.C.A. § 723c. This reasoning, pursued to its logical conclusion, effectively answers the contention of appellant because, if the time served on parole is lost to the prisoner, his sentence would not expire on the date he contends but on some later date, and the order of revocation was, therefore, well within the term of sentence and, by that fact, within the jurisdiction of the Parole Board.

In Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808, the respondents were paroled before completing sentences in federal prisons; before expiration of their sentences and while on parole they committed second federal offenses, for which they were convicted, sentenced, and thereafter completely served sentences in a federal penitentiary; *after* completion of their second sentences respondents were held in custody by the warden of the penitentiary under parole board warrants. Contending that they had served out the unexpired portions of their first sentences during the period they were imprisoned under their second sentences, and that, therefore, they had completely served their first sentences, the prisoners petitioned for habeas corpus; the District Court discharged the prisoners and the Court of Appeals, 5 Cir., 92 F. 2d 756, affirmed. The Supreme Court, however, reversed the orders entered, saying in part (pages 362, 363 of 304 U.S., page 874 of 58 S.Ct., 82 L.Ed. 1399, 116 A. L.R. 808): "Since service of the original sentence was interrupted by parole violation, the full term of *that* sentence has not been completed. Just as respondent's own misconduct (parole violation) has prevented completion of the original sentence, so has it continued the authority of the board over respondent until that sentence is completed and expires. Discretionary authority in the board to revoke a parole *at any time before expiration of a parolee's*

*sentence* was provided—and is necessary —as a means of insuring the public that parole violators would be punished. The proper working of the parole system requires that the board have authority to discipline, guide and control parole violators whose sentences have not been completed. It is not reasonable to assume that Congress intended that a parolee whose conduct measures up to parole standards should remain under control of the board until expiration of the term of his sentence, but that misconduct of a parole violator could result in reducing the time during which the board has control over him to a period less than his original sentence." See also Platek v. Aderhold, 5 Cir., 73 F.2d 173, 175.

The hearing below was in all respects full and fair and met the tests promulgated by the Supreme Court for proceedings on petition for writ of habeas corpus, and the order of said court entered in this cause should be and is affirmed.