JENKINS v. MADIGAN.

No. 11053.

United States Court of Appeals, Seventh Circuit.

April 15, 1954.

N. George Nasser, Edward L. Hamilton, Terre Haute, Ind., for appellant.

Jack C. Brown, U. S. Atty., Stephen Leonard, William H. Sparrenberger, Asst. U. S. Attys., Indianapolis, Ind., for defendant-appellee.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In this appeal we review the judgment of the District Court denying a petition for writ of habeas corpus filed by petitioner, naming the acting warden of the United States penitentiary at Terre Haute, Indiana, as respondent.

Upon the filing of the petition, the respondent was ordered to show cause why a writ of habeas corpus should not issue. He thereupon filed an answer, to which petitioner filed a traverse.

A written stipulation of facts was signed and filed.

Thereafter, by leave of court, respondent filed an addendum to his answer to which no traverse was filed by petitioner.

The controlling facts, as set forth in the stipulation and the addendum, are as follows:

On February 2, 1949, petitioner was sentenced in the United States District Court for the Northern District of Indiana, Fort Wayne Division, to a term of four years' imprisonment for violation of the National Motor Vehicle Theft Act, 18 U.S.C.A. § 2311 et seq. On July 10, 1950, petitioner was released on parole from said sentence and imprisonment which he was serving in the United States reformatory at Chillicothe, Ohio. Petitioner remained on parole until December 9, 1950, at which time he was arrested as a federal parole violator by virtue of a federal parole violator warrant for the arrest of petitioner issued on November 20, 1950, by the United States Board of Parole. The arrest of petitioner on December 9, 1950, was made by agents of the Federal Bureau of Investigation and was made with the knowledge that the said parole violator warrant for the arrest of petitioner had been issued.

On December 9, 1950, petitioner was taken by said federal agents to the Allen county jail located at Fort Wayne, Indiana, as such parole violator, where the petitioner was then held. The Allen county jail card pertaining to petitioner, among other things, showed "Escaped on 12–4–50" and "Returned by Federal Authorities 12–10–50".

The petitioner had, previous to his arrest by federal agents as a parole violator, entered a plea of guilty to second degree burglary charges in the Allen county court and was sentenced in the said court on November 20, 1950, to an indeterminate term of two to five years, to be served at the state reformatory at Pendleton, Indiana. On December 4, 1950, the petitioner, while awaiting transfer to the state reformatory at Pendleton, walked out of the Allen county jail.

Several days after December 9, 1950, petitioner was released to the Allen county authorities and was transported to the state reformatory at Pendleton, Indiana, where he remained for a period of two years. Neither the United States marshal or any other federal agent made any entries on the parole violator warrant reflecting any of the foregoing activities.

On December 28, 1950, the United States marshal for the Northern District of Indiana sent a letter to the superintendent of the Indiana reformatory at Pendleton, notifying him of the warrant issued for violation of parole and asking that petitioner be detained and the marshal be given advance notice of the petitioner's release in order that "we may assume custody".

Upon the petitioner's release from the state reformatory at Pendleton, Indiana,

on November 20, 1952, he was immediately taken into custody by the United States marshal under color of the parole violator warrant and was transported to the United States penitentiary at Terre Haute, Indiana, to serve the remainder of the four-year term imposed on petitioner on February 2, 1949.

Entries were made by the United States marshal on the parole violator warrant reflecting the latter action. The petitioner is now confined in the United States penitentiary in Terre Haute, Indiana, under color of the parole violator warrant.

Petitioner contends that while he was out of prison on parole he was still serving his federal sentence, and that, as a paroled prisoner, he remained in legal custody which could not be waived except by the Attorney General of the United States. He further contends that he was illegally delivered to Indiana state authorities without proper legal authority and that therefore the time served under the state sentence should be credited to the remainder of his federal sentence, thus entitling him to a release on habeas corpus.

Respondent, represented by the United States attorney of the Southern District of Indiana, contends that the conviction, sentencing and imprisonment of petitioner, for a crime committed while on a federal parole, constituted a violation of that parole and suspended the service of his original sentence, his subsequent service in prison being attributable to his second sentence only, and that his rights and status as to his first sentence were analogous to those of an escaped convict.

Petitioner was in the Allen county jail awaiting transfer to the state reformatory under a sentence imposed by the Indiana court when on December 4, 1950, he escaped. He was apprehended by federal agents who knew that there was a United States parole violator warrant for him outstanding. They lodged him in the jail from which he had escaped. From there he was taken by the Indiana authorities to the state reformatory where he served a term of two years. There having been filed with the superintendent of the reformatory, on December 28, 1950, a notice of the warrant and a request that petitioner be detained so that the marshal could assume custody of him at the expiration of his term, he was then taken by federal authorities and placed in a federal penitentiary where he now is.

■ We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction of the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure. One accused of crime may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. Ponzi v. Fessenden, 258 U.S. 254 at page 259, 260, 42 S.Ct. 309, 66 L.Ed. 607.

■■ A parole is not a suspension of a sentence. It is a substitution during the continuance of the parole, of a lower grade of punishment, by confinement in the legal custody and under the control of the warden within the specified prison bounds outside the prison, for the confinement within the prison adjudged by the court. While the parolee is out of prison under the parole, he is still serving his sentence. Anderson v. Williams, 8 Cir., 279 F. 822 at page 827, reversed on other grounds in Anderson v. Corall, post.

In Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247, it appears that Corall was sentenced to a three-year term in the Leavenworth penitentiary for the crime of breaking into a post office. He served in the penitentiary from November 25, 1914, until February 24, 1916, when he was allowed to go out on parole. On June 28, 1916, a warrant for the retaking of Corall as a parole violator was issued. Before he was retaken, and in

October, 1916, he was convicted of a crime in Illinois and sentenced to the Illinois state penitentiary where he was confined until December, 1919. After his release from that prison he was retaken December 17, 1919, on the warden's warrant, to the Leavenworth penitentiary. In January, 1920, the parole board revoked and terminated his parole. The court said, 263 U.S. at page 196, 44 S.Ct. at page 44:

"Corall's violation of the parole, evidenced by the warden's warrant and his conviction, sentence to and confinement in the Joliet penitentiary, interrupted his service under the sentence here in question, and was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict. Drinkall v. Spiegel, Sheriff, 68 Conn. 441, 449, 450, 36 A. 830, 36 A.L.R. 486. The term of his sentence had not expired in October, 1916, when, at Chicago, he was convicted of another crime and sentenced to the Joliet penitentiary. Then—if not earlier—he ceased to be in the legal custody and under the control of the warden of the Leavenworth penitentiary, as required by § 3 of the act and the terms of the parole authorized thereby. His claim that his term expired in 1917 before he was retaken and while he was serving sentence at Joliet cannot be sustained, and we hold that it had not expired in January, 1920, at the time of the action of the board."

In Craig v. Hunter, 10 Cir., 167 F.2d 721, it appears that Craig, who was serving a sentence of fifteen years in the state of Washington penitentiary, escaped and was rearrested in Michigan where he was being held for Washington authorities. Then the United States took him into custody for prosecution for violation of the Dyer act in the United States District Court for the Eastern District of Michigan. He there pleaded guilty and was sentenced to two and one-half years' imprisonment at Leavenworth, Kansas. By habeas corpus Craig questioned the validity of this sentence. He contended that the United States District Court was without jurisdiction to try him because at the time he was subject to the jurisdiction of the state court. The United States Court of Appeals held that the question of conflicting jurisdiction between a state and a federal court arose under the rule of comity and conferred no rights whatever upon a defendant who had violated the laws of both sovereignties, and that that was so even if one sovereign took jurisdiction of the defendant in violation of the rights of the other sovereign and over its protest. The court said at page 722 of 167 F.2d:

"Only the offended sovereign could raise the question by asserting its prior rights to the possession of the defendant in an appropriate proceeding.

"* * * The fact, however, still remains that if anyone's rights to the possession of appellant were infringed, it was the right claimed by Washington. The conflict between it and the United States, if any, would arise under the rule of comity and it alone could complain.

"It is pointed out that Washington, by filing its detainer with the Federal Authorities, has evidenced its protest to the interference with its prior jurisdiction. We are rather of the view that it is more reasonable to conclude that such detainer evidences acquiescence. The effect of the detainer is to say that Washington wants appellant returned to it when he has completed his term in the Federal Penitentiary. But even though the detainer be construed as a protest, it gives appellant no standing in this case as it is for Washington alone to pursue its protest if its action is to be considered as such."

In Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, the court reversed orders in habeas corpus pro-

ceedings discharging prisoners from custody.

These prisoners were paroled before completing sentences in federal prisons. While on parole they committed second federal offenses for which they were convicted, sentenced and thereafter completely served sentences in the Atlanta penitentiary. The prisoners contended that from the moment of their imprisonment in the penitentiary under the second sentences, they also began service of the unexpired part of their original sentences. If this contention were correct respondents also completely served the unexpired parts of the first sentences.

After completion of service of the second sentences, the prisoners were held in custody by the warden of the penitentiary under board warrants alleging violations of parole.

The court held, 304 U.S. at page 361, 58 S.Ct. at page 873, that when such a prisoner

" * * * committed a federal crime while on parole, for which he was arrested, convicted, sentenced, and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were 'analogous to those of an escaped convict.' Not only had he—by his own conduct—forfeited the privileges granted him by parole, but, since he was no longer in either actual or constructive custody under his first sentence, service under the second sentence cannot be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system."

The court quoted § 723c, 18 U.S.C., c. 22 in part as follows:

" ' * * * The Board of Parole * * ' * ' or any member thereof, shall have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve.' "

Applying this section, the court said, 304 U.S. at page 362, 58 S.Ct. at page 873:

"Obviously, this provision does not require that a parole violator's original, unexpired sentence shall begin to run from the date he is imprisoned for a new and separate offense. It can only refer to reimprisonment on the original sentence under order of the Parole Board.

Since service of the original sentence was interrupted by parole violation, the full term of *that* sentence has not been completed. Just as respondent's own misconduct (parole violation) has prevented completion of the original sentence, so has it continued the authority of the board over respondent until that sentence is completed and expires. Discretionary authority in the board to revoke a parole *at any time before expiration of a parolee's sentence* was provided—and is necessary—as *a means of insuring* the public that parole violators would be punished."

At page 363 of 304 U.S. at page 874 of 58 S.Ct., the court added:

"Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offence committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified. * * *

"Respondents have not completed service of their original sentences and were not entitled to release."

■ Applying the principles announced in the foregoing cases, to the

facts in the case at bar, it is apparent that the federal authorities acquiesced in the imprisonment of the petitioner by the state of Indiana. This is shown not merely by the failure of the United States to interfere with the incarceration of petitioner by Indiana, but it is also evidenced by the fact that the United States affirmatively recognized and acquiesced in the imprisonment of defendant by the state when its marshal filed a written detainer with the superintendent of the state reformatory. The petitioner violated the laws of two sovereignties and it is no concern of his as to the order in which he serves the respective sentences imposed upon him.

We find no error in the order appealed from and, accordingly, it is affirmed.

Affirmed.