**William Warren HASH, Petitioner,**

**v.**

**Pat HENDERSON, United States Marshal for the Eastern District of Arkansas, Respondent.**

**No. LR–66–C–253.**

United States District Court
E. D. Arkansas, W. D.
Jan. 17, 1967.

Memorandum and Order Jan. 30, 1967.

Eugene C. Fitzhugh, Little Rock, Ark., for petitioner.

Lindsey Fairley, Asst. U. S. Atty., Eastern District of Ark., Little Rock, Ark., for respondent.

Memorandum Opinion

HENLEY, Chief Judge.

On December 21, 1966, petitioner, William Warren Hash, caused to be filed in this Court a petition for a writ of habeas corpus alleging that he was being unlawfully held by respondent, the United States Marshal for the Eastern District of Arkansas, under a warrant issued by the United States Board of Parole. The complaint was that when the warrant was issued on October 25, 1966, a sentence of imprisonment imposed on petitioner by this Court in 1962 had expired, and that the warrant was void.

The writ was issued as prayed, and respondent made due return thereon alleging that petitioner's term of imprisonment had not expired when the warrant was issued, and that, on the contrary, petitioner had 527 days of his term left to serve.

The matter was heard before the Court on January 4, 1967, and on January 6 the Court entered its judgment dissolving the writ, dismissing the petition, and authorizing the Marshal to complete the execution of the warrant according to its terms. In the judgment the Court stated that it would shortly file a memorandum opinion incorporating its findings of fact and conclusions of law. The Court now does so.

The facts are not disputed.

On September 6, 1962, petitioner was indicted by the federal grand jury for the Eastern District of Arkansas on a charge of theft of mail matter in violation of 18 U.S.C.A. § 1702.

On October 22, 1962, petitioner, who was then serving a sentence in the Arkansas State Penitentiary, was brought before this Court and was arraigned on the federal charge. He entered a plea of guilty and was sentenced to the custody of the Attorney General of the United States for a term of three years. The Court's judgment in part recites: "The Court recommends commitment to Arkansas State Penitentiary so that sentence may run concurrently with the sentence said defendant is now serving in that institution."

The Attorney General, acting through the Bureau of Prisons, United States Department of Justice, honored that recommendation, as he was authorized to do by 18 U.S.C.A. § 4082, and in due course designated the Arkansas institution as the place of petitioner's federal confinement.

On March 7, 1964, the Arkansas State Parole Board granted parole to petitioner. On March 11, 1964, the United States Board of Parole (hereinafter the Board) also granted parole, and petitioner was released from custody.

Between March 11, 1964, and August 5, 1964, petitioner became involved in one or more law violations and was arrested on August 5 as a State parole violator. He was returned to the Arkansas State Penitentiary and his State parole was formally revoked on or about August 12, 1964. On August 13, 1964, the Board issued a warrant charging him with parole violation. That warrant was lodged at the Penitentiary as a detainer; it was not served on petitioner at that time although he was advised of its existence by a fellow inmate of the institution. There was no formal revocation of the federal parole at the time.

On June 10, 1966, petitioner was released from the Penitentiary and was turned over to the United States Marshal for the Eastern District of Arkansas who conveyed him to the Federal Correctional Institution at Texarkana, Texas. The basis of petitioner's being handed over to the Marshal and of his transfer to Texarkana was the parole violator warrant above mentioned. The record does not reflect whether or when the 1964 federal parole was formally revoked.

On August 17, 1966, petitioner was re-paroled and was released from the federal institution. Again petitioner turned out to be a poor parole risk. He was arrested by local authorities in Little Rock, Arkansas, on bad check charges and was confined in the Pulaski County, Arkansas, jail. On October 25, 1966, the Board issued another warrant for petitioner's arrest as a parole violator. That warrant was served by respondent on November 17, 1966, and it is under that warrant that petitioner is now held in custody.

The controversy between the parties is whether the period of time between August 5, 1964, when petitioner was returned to the Arkansas State Penitentiary and June 10, 1966, when he was released to the federal authorities should be counted as having been served on the 1962 federal sentence. Petitioner argues that such period should be included in calculating time served; respondent (actually the Board), argues that the period in question is to be excluded in computing time served. There is no question that if the period is included, petitioner has served his federal sentence and is entitled to release. It is equally unquestionable that if the period in controversy is excluded, petitioner still has a substantial period of time to serve even after being given credit for all of his confinement since November 17, 1966.

The contentions of the parties must be evaluated in the light of controlling federal statutes and relevant regulations promulgated by the Department of Justice. This is true because the federal parole system, however humane and progressive it may be, is a creature of the statutes, and the parole of a given prisoner is ultimately the product of legislative grace and administrative discretion.

A person convicted of a federal crime and receiving a prison sentence is committed to the custody of the Attorney General to be confined in an institution to be designated by that official or by his delegate. 18 U.S.C.A. § 4082(a).

A federal court does not have uncontrolled discretion with regard to the time at which a federal sentence is to commence. 18 U.S.C.A. § 3568, provides that such a sentence shall, in general, commence to run when the prisoner is received at the designated institution of confinement or when he is taken into federal custody for transportation to that institution. And, the statute provides that "No sentence shall prescribe any other method of computing the term." The binding force of that statute has been discussed by the courts, including this one, on many occasions. See e. g. Taylor v. Baker, 10 Cir., 284 F.2d 43, and cases there cited, and United States v. Baker, E.D.Ark., 170 F.Supp. 651, and cases there cited.

■■ In view of the provisions of section 3568 it is clear that a federal court imposing a sentence on a State prisoner has no power to make the federal sentence run concurrently with the State sentence. However, section 4082(b) gives to the Attorney General the authority to designate a State institution as a place for the service of a federal sentence, and where the sentencing court recommends such a designation, the recommendation is usually followed as a matter of administrative practice. Where there is such a designation, the prisoner receives credit on his federal sentence for the time spent in the State institution following the designation. Thus, in such circumstances the federal and the State sentences "run concurrently."

The matter of the parole of federal prisoners is governed by 18 U.S.C.A., §§ 4201–4210 and by Part 2 of Title 28 of the Code of Federal Regulations.

Generally speaking, a federal prisoner sentenced to a term or terms of imprisonment totalling more than 180 days is eligible for parole after he has served one-third of his sentence. Section 4202. If parole is granted, the prisoner is subject to the jurisdiction of the Board. Section 4203.

Section 4205 provides for the issuance of a warrant by the Board or a member thereof for the arrest of a person who has violated his parole, and provides that the unexpired term of imprisonment of such person shall begin to run from the date

"he is returned to the custody of the Attorney General." It is further provided that the time spent on parole "shall not diminish the time [the parolee] was sentenced to serve." The warrant may be issued at any time before the expiration of the parolee's term of imprisonment.

Section 4207 deals with formal revocation of paroles. That section provides that a prisoner retaken on a parole violator warrant shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board; that the Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof; and that if the parole is revoked and the parole terminated, "the * * * prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced."

Section 2.11 of 28 CFR provides that any person convicted of a federal offense and confined therefor in a State institution under a designation of the Attorney General "shall be eligible for parole by the Board on the same terms and conditions and by the same authority, and subject to recommital for the violation of such parole as though he were confined in a Federal penitentiary, reformatory, or other correctional institution." It is thus clear that the principles applicable to federal parolees who have been confined in State institutions are the same as those applicable to such parolees who have been confined in federal institutions proper.

Turning now to the application to this case of the foregoing statutes and regulations, the situation before the Court may be summarized as follows: We have a single prisoner confined for a period of time in a State institution by two sovereigns, the State and the federal Government, for separate offenses; in due course the prisoner is paroled by both authorities; while at liberty he violates both paroles; one of the sovereigns revokes its parole and reconfines the prisoner in the same institution whence he was originally released; the other sovereign does not revoke its parole at the time; it does issue its warrant for the prisoner's arrest as a parole violator and lodges that warrant as a detainer at the State institution. The fact that two sovereigns are involved tends to be a somewhat confusing factor in the case, and serves to distinguish the case factually from Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, and Hammerer v. Huff, 71 App.D.C. 246, 110 F.2d 113, cited to the Court by counsel for respondent.

Simply stated, the position of petitioner is that when he was reconfined in the Arkansas Penitentiary, he immediately recommenced the service of both the State and the federal sentences but without credit for the time during which he was at liberty. The position of respondent is that petitioner was not returned to federal custody when he was recommitted to the Arkansas Penitentiary in August 1964, and that federal custody was not reacquired and petitioner's federal sentence did not commence to run again until the Government took physical custody of petitioner in June 1966 under the Board's 1964 warrant.

At first blush the position of petitioner does not lack plausibility and, indeed, it is not without appeal. The Court is convinced, however, that it cannot be sustained when the facts of the case are considered in the light of the principles laid down in Zerbst v. Kidwell, supra, which principles are applicable to petitioner's case although, as stated, the factual situation in *Kidwell* differs from that presented here.[1]

---

1. Kidwell was confined originally in a federal institution and was paroled therefrom. While on parole he committed another federal offense and was confined therefor in the same or in another federal institution. After the second sentence had expired the Board caused him to be arrested for violation of his parole. The Supreme Court held that the second confinement was referable solely to the second offense, and that Kidwell would be required to serve the balance of his first term after the completion of the second sentence.

It is important to realize that although a federal parolee is under the supervision and subject to the jurisdiction of the Board, and although his activities are circumscribed and restricted, he is not a prisoner while on parole. It is also important to realize that arrest and parole revocation do not necessarily or automatically result from a parole violation which comes to the attention of the Board or its officers. Minor violations may be overlooked, and even a more serious violation may be forgiven.

While petitioner was at liberty between March and August, 1964, he was not in the custody of the Attorney General or anyone else. Unless he violated his parole, the Attorney General had no right to take him into custody; and if he did violate his parole, the only means whereby the Attorney General could obtain custody of him was by the service upon him of a warrant issued by the Board or by a member thereof.

 The action of the State of Arkansas in revoking his State parole and reconfining petitioner in August 1964 did not affect his federal parole one way or the other, and did not, in the Court's estimation, amount to a return of petitioner to federal custody. When the State arrested petitioner and revoked his parole, he became and remained simply a State prisoner with a federal warrant lodged against him as a detainer. Federal custody was not reacquired until that warrant was served.

It is true, of course, that the Board might have caused its warrant to be served formally on petitioner while he was still in the State institution and then proceeded to revoke the federal parole.

But that course was not taken, and in the Court's view petitioner had no right to have it taken or to complain that it was not taken. As *Kidwell* makes clear, the question of whether and when a federal parole is to be revoked is cne which rests almost entirely within the discretion of the Board.

This Court does not know, of course, why the Board took one course of action rather than another; neither does the Court know why the Board retained custody of petitioner for only a little over two months after custody was reacquired in 1966. There may have been any number of reasons good or bad for the Board's determinations as to the actions to be taken with respect to petitioner. Assuming as an abstract proposition that the Board may not, and certainly it should not, act arbitrarily in a given case, the law does not require that it act uniformly.

Actually, petitioner has no reason to complain of the exercise of administrative discretion in his case. The Board has paroled him twice, and both times he has betrayed the trust placed in him. Had he behaved himself during either of his parole periods, he would not now be in confinement and would have had no occasion to file the petition which has been considered and denied.

## ON MOTION FOR RELEASE ON BAIL

This cause is now before the Court on the motion of petitioner, William Warren Hash, for an order releasing him on bail pending disposition of his appeal to the Court of Appeals for the Eighth Circuit from the order of this Court, dated January 17, 1967, discharging a writ of habeas corpus issued at his behest, dismissing the petition for habeas corpus and remanding petitioner to the custody of the United States Marshal for the Eastern District of Arkansas. The notice of appeal was filed on January 26 and the motion for release on bail was filed the same day.[1]

Since 1954 the matter of bail pending appeal in habeas corpus cases has been governed by Rule 49 of the Supreme Court of the United States, 28 U.S.C.A.

---

1. Petitioner is in custody as a parole violator, and it is the Court's information that after the habeas corpus petition was dismissed, petitioner was transported by the Marshal to the Federal Correctional Institution at Texarkana, Texas, pending further action by the United States Board of Parole.

Prior to that time the matter was governed by Rule 45 of that Court.

Rule 49 differentiates, as did Rule 45, between cases in which a habeas corpus petitioner has been adjudged entitled to release and cases in which it has been determined that petitioner is not entitled to release.

Rule 49(2) provides that pending review of a decision discharging a writ of habeas corpus after it has been issued, or discharging a rule to show cause why such writ should not be granted, the prisoner may be remanded to the custody from which he was taken by the writ, or detained in other appropriate custody, "or enlarged upon recognizance with surety, as to the court *in which the case is pending,* or to a judge or justice thereof, may appear fitting in the circumstances of the particular case." (Emphasis added.)

Rule 49(3) provides in substance that pending review of a decision discharging a prisoner from custody on habeas corpus, he is entitled to be released on bail and may be released on his own recognizance without surety if such a course seems proper to the court "in which the case is pending."

Rule 49(5) defines the meaning of the term "court in which the case is pending." The subdivision provides:

"* * * For the purpose of this rule, a case is pending in the court possessed of the record until a notice of appeal or a petition for writ of certiorari has been filed, or until the time for such filing has expired, whichever is earlier; and is pending on review in the appellate court after the notice of appeal or the petition for writ of certiorari has been filed."

 As the court construes Rule 49 (5), it has no jurisdiction to grant bail to petitioner pending his appeal in view of the fact that he filed his notice of appeal on the same day and probably at the same time he filed his motion for the allowance of bail. Hence, the case is now pending in the Court of Appeals, and it is to that Court that petitioner must apply

for release on bail. Cf. Benson v. State of California, 9 Cir., 328 F.2d 159, in which the District Court denied a certificate of probable cause and denied bail pending appeal before notice of appeal was filed.

But, assuming that the Court has jurisdiction to admit petitioner to bail at this stage of the proceedings the Court in the exercise of its discretion would be most reluctant to do so in view of the insubstantiality of the appeal and of what the records of the Court and of the Probation and Parole Officers reveal with respect to petitioner's past record and habits of life.

However, the motion is now denied for lack of jurisdiction to grant it.