Robert Lee STOKES, Petitioner,

v.

Lucille ROBUCK, Chairman Kentucky
Parole Board, et al., Respondents.

United States District Court,
E. D. Kentucky,
Frankfort Division.

Nov. 6, 1973.

————◆————

Robert Lee Stokes, pro se.
None appearing for respondents.

## MEMORANDUM

SWINFORD, District Judge.

This petitioner seeks to proceed in forma pauperis in three "actions" styled: "Preliminary and Temporary Injunction and Declaratory Judgment"; "Application for Writ of Habeas Corpus"; and "Civil Rights Complaint and Damage Suit". The facts alleged in these documents are extremely confusing; however, it is apparent that in 1941 the petitioner commenced serving a twenty-one year sentence imposed by the Fayette Circuit Court. Although many of the succeeding years have been spent on conditional release, Stokes has been reincarcerated on several occasions for parole violations and additional criminal offenses. It is now claimed that the time on parole should have satisfied at least a portion of the term meted in 1941, and that the Kentucky statute denying such credit is unconstitutional.

K.R.S. 439.344 governs the effect of parole upon a criminal sentence:

"The period of time spent on parole shall not count as a part of the prisoner's maximum sentence except in determining parolee's eligibility for a final discharge from parole . . .."

While the constitutionality of this statute has not been determined, a federal provision containing substantially the same elements has consistently been upheld. 18 U.S.C. § 4205 provides:

"A warrant for the retaking of any . . . prisoner who has violated his parole, may be issued . . . within the maximum term . . . for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve."

In Van Buskirk v. Wilkinson, 9th Cir., 216 F.2d 735 (1954), the prisoner challenged the statute's denial of credit for time spent on parole; the Ninth Circuit could discern no constitutional defect in the assailed statute:

"When appellant was conditionally released, he became subject to all the provisions of law relating to parole, one of which was that if he violated his parole he should again be taken into custody and the time spent on parole should not diminish the time he was originally sentenced to serve . . . When he was again taken into custody he began service of the remaining portion of his sentence which had been provisionally deferred. Such added service, under the statutory conditional release plan, was potentially a part of his original sentence and hence did not increase his sen-

tence nor subject him to double jeopardy." Id. at 738.

Accord, Weathers v. Willingham, 10th Cir., 356 F.2d 421 (1966); O'Callahan v. Attorney General of United States, 1st Cir., 351 F.2d 43 (1965), cert. denied, 382 U.S. 1017, 86 S.Ct. 632, 15 L.Ed.2d 531 (1966); Dolan v. Swope, 7th Cir., 138 F.2d 301 (1943).

The argument that periods on parole are equivalent to incarceration for purposes of sentence reduction belies an erroneous view of the philosophy underlying a conditional release system. Parole is characterized by neither confinement nor absolute freedom; it merely affords the opportunity for a controlled assimilation into society. "Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term . . ." Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). In Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), the Supreme Court examined this concept and concluded that allowing a recommitted convict credit for time spent on parole would seriously undermine the motivational control possessed by supervisory authorities:

"The proper working of the parole system requires that the Board have authority to discipline, guide and control parole violators whose sentences have not been completed. It is not reasonable to assume that Congress intended that a parolee whose conduct measures up to parole standards should remain under control of the Board until expiration of the term of his sentence, but that misconduct of a parole violator could result in reducing the time during which the Board has control over him to a period less than his original sentence.

Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board." Id. at 362–363, 58 S. Ct. at 874.

The court is similarly unimpressed by Stokes' claim that he was ignorant of the statutory conditions imposed at the time of his release:

"Even if . . . petitioner chose to accept parole without realizing the statutory consequences of a violation, there was no infringement of any constitutional right. Petitioner accepted the parole 'custody' in the hope that it would discharge the balance of his prison sentence. Had he not violated the conditions it would have done so. The Constitution does not require that he have it both ways." O'Callahan v. Attorney General of United States, supra, 351 F.2d at 44.

See also Esquivel v. United States, 10th Cir., 414 F.2d 607 (1969); Gould v. Taylor, M.D.Pa., 153 F.Supp. 71 (1957).

An order will be entered denying leave to proceed in forma pauperis and dismissing the proffered complaints.