BOARD OF TRUSTEES OF THE YOUTH CORRECTIONAL
INSTITUTION COMPLEX, RESPONDENT, v. ANDREW
SMALLS, APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1979—Decided December 26, 1979.

Before Judges SEIDMAN, MICHELS and DEVINE.

*Stanley C. Van Ness,* Public Defender, attorney for appellant (*Ursula Solek,* Assistant Deputy Public Defender, of counsel and on the brief).

*John J. Degnan,* Attorney General of the State of New Jersey, attorney for respondent (*Erminie L. Conley,* Assistant Attorney General, of counsel; *Eugene M. Schwartz,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MICHELS, J. A. D.

Appellant Andrew Smalls, who is also known as Johnny Thomas, appeals from a final decision of respondent Board of Trustees of the Youth Correctional Institution Complex (the Board) revoking his parole. The revocation was based on several parole violations, including convictions in the Superior Court, Law Division, Hudson County, for receiving stolen property and in the Supreme Court of the State of New York, County of New York, for attempted burglary. Appellant does not contest the Board's finding that he violated the conditions of parole. Rather, he challenges the revocation solely on jurisdictional and procedural grounds. Thus, a brief chronology of the events leading to the revocation is helpful to a resolution of this appeal.

On December 6, 1973 appellant was sentenced to the Youth Correctional Institution Complex for an indeterminate term with a five-year maximum following his conviction for breaking and entering with intent to steal. On January 7, 1977 he was released on parole, at which time his adjusted maximum sentence date was July 2, 1978. On March 24, 1977, while on parole, he was arrested in Jersey City and charged with receiving stolen

property and failing to give a good account of himself. On May 29, 1977 he was again arrested in Jersey City and charged with breaking and entering. These charges subsequently led to his indictment by the Hudson County grand jury.

Thereafter, when appellant failed to report to his parole officer, the Bureau of Parole declared him to be missing, and on July 20, 1977 filed a warrant with the Jersey City Police Department. On August 3, 1977 appellant was arrested in New York City on charges of burglary and possessing stolen property. As a result of the foregoing arrests and his failure to report to his parole officer, a notice of probable cause hearing, dated August 24, 1977, was sent to appellant at his last known address. On August 30, 1977 a probable cause hearing was held even though appellant failed to appear. The hearing officer determined that there was probable cause to believe that appellant violated the conditions of his parole and that he should be arrested pending a final revocation hearing. On October 18, 1977 a "Wanted Persons Notice" was filed with the New Jersey State Police. On October 26, 1977 the final parole revocation hearing was held notwithstanding appellant's failure to appear, and on November 9, 1977 his parole was revoked. At that time appellant still owed eight months on his sentence.

On December 5, 1977 appellant pleaded guilty in the Supreme Court of the State of New York to a charge of attempted burglary and was sentenced to a prison term of 1½ to 3 years. The sentence provided that it be "concurrent with any time to be served in New Jersey." On March 6, 1978 the Bureau of Interstate Services of New Jersey Department of Corrections sent to the Department of Correctional Services of the State of New York a parole warrant against appellant. On March 22, 1978 the warrant was returned to the Bureau of Interstate Services which, in turn, sent the warrant to Clinton Correctional Facility at Dannemora, New York, where appellant was then imprisoned, with instructions that it be filed as a detainer against him. On March 28, 1978 appellant was transferred to

the Great Meadow Correctional Facility in Comstock, New York, and thereafter the warrant was filed at that institution.

On May 17, 1978 appellant, pursuant to the Interstate Agreement on Detainers, to which both New York and New Jersey are signatories (see *New York C.P.L.* § 580 (McKinney's 1971); *N.J.S.A.* 2A:159A 1 *et seq.*), requested final disposition of charges pending against him in Hudson County. On June 27, 1978 appellant was returned to the Hudson County Correctional Center to await disposition of the criminal charges pending against him in Hudson County. The Bureau of Parole thereupon filed a new notice of probable cause hearing because the prior hearing was conducted *in absentia.* Appellant, however, waived this hearing. On September 11, 1978 appellant pleaded guilty in Hudson County to receiving stolen property, and on October 12, 1978 was sentenced to the Hudson County Penitentiary for one year, which sentence was to be served concurrently with the sentence he was then serving in New York. Appellant was thereupon returned to the Great Meadow Correctional Facility to continue serving his sentence.

On June 5, 1979 appellant was paroled by the New York authorities. Since there was still pending against him a New Jersey parole warrant, he was delivered by the New York authorities to the Youth Correctional Institution Complex and confined there as a parole violator. On June 27, 1979 a final parole revocation was held. Appellant did not contest the validity of the revocation charges, but attacked the jurisdiction of the Board to revoke his parole on the ground that he was not afforded a timely hearing. On July 11, 1979 the Board rejected this argument and sustained its prior decision of November 9, 1977, revoking appellant's parole.

## I

■ Appellant now claims for the first time on appeal that since the New York sentence imposed in February 1978 provided

that it be "concurrent with any time to be served in New Jersey," and the only outstanding sentence was the indeterminate one, the adjusted maximum date of which was July 2, 1978, the New Jersey sentence expired on that date and he should have been released immediately. The thrust of appellant's argument is that the indeterminate sentence was running while he was serving the New York sentence and therefore the Board lost jurisdiction to revoke his parole after the adjusted maximum sentence date of July 2, 1978. We disagree. The plain fact is that even though appellant's New York sentence was made concurrent to his indeterminate sentence, he was in neither actual nor constructive custody under the indeterminate sentence while serving the sentence in New York. During that time, the running of appellant's indeterminate sentence was interrupted and suspended. The eight-month balance on that sentence did not run while he was in the custody of the New York authorities. Therefore, appellant's indeterminate sentence did not terminate or expire as of its original adjusted maximum sentence date of July 2, 1978. As we so appropriately observed in *Shaw v. Hatrak*, 164 *N.J.Super.* 414 (App.Div.1978):

> . . . petitioner committed a crime while on parole for which he was convicted, sentenced and imprisoned, and later remanded to the authorities here to await parole revocation proceedings. Thus, not only was his parole violated, but, at least during the period of his incarceration in Pennsylvania, service of the original sentence, which would normally have continued while petitioner was on parole, was interrupted and suspended, since he was no longer in either actual or constructive custody under the first sentence. *Zerbst v. Kidwell*, 304 *U.S.* 359, 361, 58 *S.Ct.* 872, 82 *L.Ed.* 1399 (1938). This accords with our public policy to require a parole violator to serve out the full term of the original sentence without mitigation for time in service of a sentence for a later offense. [at 418–419; citations omitted].

Accordingly, we hold that the Board still retained jurisdiction over appellant and had the power to revoke his parole.

## II

Appellant's next contention that he did not receive a prompt final revocation hearing within the guidelines of *Morris-*

*sey v. Brewer*, 408 *U.S.* 471, 92 *S.Ct.* 2593, 33 *L.Ed.2d* 484 (1972), is also without merit. Appellant argues essentially that he was "taken into custody" on May 26, 1978, when the New Jersey parole warrant was filed as a detainer against him while serving his New York sentence, and therefore his final parole revocation hearing should have been held promptly thereafter. While a parole revocation hearing must be tendered within a reasonable time after a parolee is taken into custody, *Morrissey v. Brewer, supra,* it is now firmly settled by *Moody v. Daggett*, 429 *U.S.* 78, 97 *S.Ct.* 274, 50 *L.Ed.2d* 236 (1976), that a parolee's right to such a hearing accrues only after the parole violation warrant is executed and the parolee is taken into custody under the warrant. The Supreme Court in *Moody* reasoned that:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time.

> Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which Morrissey sought to protect. Indeed, in holding that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," *Morrissey*, 408 *U.S.* at 488, 92 *S.Ct.* 2593 [at 2603,] 33 *L.Ed.2d* 484, we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant. [at 86 87, 97 *S.Ct.* at 278, 50 *L.Ed.2d* at 243 244]

██  Appellant attempts to distinguish *Moody* by pointing out that there the Supreme Court noted that petitioner's opportunity for parole was not infringed by the detainer because "the same Commission which will consider petitioner's parole . . . will decide whether to revoke parole," whereas here he must contend with "different and autonomous parole authorities." *Id.* at 88, 97 *S.Ct.* at 279, 50 *L.Ed.2d* at 245. The simple answer

to this argument is that appellant was not prejudiced in any way by the action of the New York or New Jersey parole authorities. New York granted appellant parole, and immediately released him to the New Jersey parole authorities. Thereafter, following a final revocation hearing, the Board revoked appellant's parole requiring him to serve out the balance of the time due on his original sentence. This action by the Board was in complete accord with our State's policy to require a parole violator to serve out the full term of the original sentence without mitigation for time in service of a sentence for a later offense. *Shaw v. Hatrak, supra*, 164 *N.J.Super.* at 419; *N.J.S.A.* 30:4·123.24. Furthermore, appellant has not alleged that the failure to accord him an immediate hearing following the filing of the parole warrant in New York deprived him of any liberty interest protected by the due process clause. The undeniable fact is that appellant did not suffer a loss of liberty by the mere filing of the parole warrant. Consequently, appellant's right to a parole revocation hearing did not arise until June 5, 1979 when the parole warrant was executed and he was taken into custody thereunder. *See Moody v. Daggett, supra ; U.S. ex rel. Caruso v. U.S. Bd. of Parole*, 570 *F.*2d 1150 (3 Cir. 1078), *cert.* den. 436 *U.S.* 911, 98 *S.Ct.* 2249, 56 *L.Ed.*2d 411 (1979); *Larson v. McKenzie*, 554 *F.*2d 131 (4 Cir. 1977); *Hicks v. United States Bd. of Paroles*, 550 *F.*2d 401 (8th Cir. 1977).

■ Finally, we note that appellant never asked for an immediate parole revocation hearing while in the custody of the New York authorities. Certainly in these circumstances appellant cannot be permitted to "sleep on his administrative remedies for fear that he has no case and then claim prejudice by reason of the passage of time." *Gaddy v. Michael*, 519 *F.*2d 669, 678 (4 Cir. 1975), *cert.* den. 429 *U.S.* 998, 97 *S.Ct.* 524, 50 *L.Ed.*2d 608 (1976).

In our view, therefore, *Moody* controls the disposition of this appeal. Appellant's final parole revocation hearing was held on

June 29, 1979, approximately three weeks after he was taken into custody under the parole warrant. This clearly satisfied the "reasonable time" requirement of *Morrissey* guidelines. *See Johnson v. N.J. State Parole Board*, 131 *N.J.Super.* 513, 521 n. 3 (App.Div.1974), certif. den. 67 *N.J.* 94 (1975).

### III

There is also no merit in the claim that appellant should have been afforded a final parole revocation hearing while he was confined at the Hudson County Correction Center in 1978 awaiting disposition of the criminal charges pending against him in Hudson County. As we have discussed above, the mere filing of the parole warrant with the New York authorities did not trigger appellant's right to a revocation hearing. Appellant was confined at the Hudson County Correction Center as a result of his request pursuant to the Interstate Agreement on Detainers for final disposition of the criminal charges pending against him in Hudson County. Appellant did not request disposition of the parole violation charges lodged against him by the Board. Thus, while appellant was in Hudson County he remained in the custody of New York and continued to serve his New York sentence. *N.J.S.A.* 2A:159A 5(f). His custody in Hudson County was merely temporary for the purpose of permitting prosecution of the criminal charges. *N.J.S.A.* 2A:159A 5(d). Following the disposition of the Hudson County charges, appellant was returned immediately to New York to complete his sentence there. *N.J.S.A.* 2A:159A 5(e).

Affirmed.