James Clarence MOORE, Petitioner,

v.

Curtis REID and P. Richerson,
Respondents.

No. 3–56.

United States District Court
District of Columbia.

July 9, 1956.

Dayton M. Harrington, Washington, D. C., for petitioner.

Oliver Gasch, U. S. Atty., for District of Columbia, Alfred Burka, Edward P. Troxell, Asst. U. S. Attys., Washington, D. C., for respondents.

KEECH, District Judge.

This case is before the court for hearing on the petition for a writ of habeas corpus, pursuant to the order of the United States Court of Appeals for the District of Columbia Circuit dated June 27, 1956.

The petitioner, James Clarence Moore, on July 16, 1955, was conditionally released, under the provisions of 18 U.S.C. §§ 4163, 4164, from Atlanta Penitentiary after serving a three to nine-year sentence for housebreaking, less credit for 1038 days' "good time." On December 22, 1955, the petitioner was arrested for violation of the conditions of his release, under a warrant signed by Scovel Richardson, Chairman of the United States Board of Parole, and confined in the District of Columbia Jail, to await hearing on revocation of his conditional release.

Prior to such hearing, the petitioner filed his petition for a writ of habeas corpus protesting that he was illegally confined on the grounds: (1) that he had been on conditional release, not pa-role; (2) that the Chairman of the United States Board of Parole had no authority to issue a warrant for arrest; (3) that he could not be imprisoned pending revocation of his conditional release; and (4) that by sending written communications to inmates of Atlanta Penitentiary he had not violated the terms of his conditional release. He acknowledged that he had been directed on several occasions by the parole officer supervising his conditional release and also by a letter from James V. Bennett, Director of the Bureau of Prisons, not to continue his attempts to communicate with such inmates. In his petition he indicated his desire that the court, not the Parole Board, determine whether he had violated his conditional release.

The respondents answered that the petitioner was lawfully confined at the District Jail pursuant to a proper warrant of arrest for violation of conditional release and, further, that it was anticipated the defendant would be accorded a hearing on the question of revocation during the week of January 16, 1956, in Washington, rather than being transferred to Atlanta or waiting for the regularly scheduled March meeting of the Board.

The hearing on revocation was held January 17, 1956, before James C. Neagles, Examiner. On January 23, 1956, the Board of Parole revoked petitioner's conditional release. On January 17, 1956, another judge of this court dismissed the petition for writ and discharged the rule to show cause, signing the formal order January 24, 1956. On appeal from this order, the Court of Appeals vacated the order and directed a full hearing.

On remand the respondents filed a supplemental return and answer to the rule to show cause, and affidavits of Robert W. Cassidy, the parole officer who supervised petitioner's conditional release, Scovel Richardson, Chairman of the United States Board of Parole, and Donald B. Laughlin, Assistant Parole Officer employed by the Federal Bureau of Prisons and assigned to the United States Penitentiary at Atlanta, with many ap-

pended exhibits, including a summary and the full transcript of the revocation hearing. The defendant was returned to the District of Columbia from Atlanta Penitentiary, and a full hearing was had before this court on July 3, 1956.

It is apparent of record that the defendant was properly confined at the time he filed his petition herein. The warrant of arrest was issued on adequate information, signed by the Chairman of the United States Board of Parole, pursuant to 18 U.S.C. § 4205 and served in accordance with the provisions of 18 U.S.C. § 4206.

■ Although release following the allowance of deductions for good conduct, as provided by statute, cannot be denied a prisoner, the granting of such release in the first instance is in the nature of a privilege bestowed by the Congress, and is conditioned by the statute, 18 U.S.C. § 4164, by the limitation that the prisoner shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term for which he is sentenced. Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, certiorari denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377.

■ In view of the Court of Appeals' order, this court has viewed the petition as if it had been filed after the Parole Board's revocation of petitioner's conditional release. This leaves for determination the questions: (1) whether there has been compliance by the Parole Board with the statutory requirement for hearing, and (2) whether the Board acted arbitrarily and capriciously in revoking petitioner's conditional release. The court may not determine de novo whether, in fact, petitioner violated his parole, United States ex rel. Jacobs v. Barc, 6 Cir., 1944, 141 F.2d 480, certiorari denied 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581; Nave v. Bell, 6 Cir., 1950, 180 F.2d 198, nor may the court pass upon the sufficiency or reliability of the information upon which the revocation was based, Rogoway v. Warden, 9 Cir., 1941, 122 F.2d 967, certiorari denied 315 U.S. 808, 62 S.Ct. 797, 86 L.Ed. 528, re-

hearing denied 316 U.S. 707, 62 S.Ct. 941, 86 L.Ed. 1774; Fox v. Sanford, 5 Cir., 1941, 123 F.2d 334, or substitute its judgment for that of the Parole Board, Freedman v. Looney, 10 Cir., 1954, 210 F.2d 56; Jones v. Welch, 1945, 80 U.S. App.D.C. 253, 151 F.2d 769, as these are all matters within the informed judgment and discretion of the administrative body. Zerbst v. Kidwell, 1948, 304 U.S. 359, 362, 58 S.Ct. 872, 82 L.Ed. 1399.

■ The only statutory requirement as to hearing, 18 U.S.C. § 4207, provides:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given *an opportunity to appear* before the Board, a member thereof, or an examiner designated by the Board."

There is no requirement of formal charges or any particular kind of hearing. Counsel for petitioner conceded in open court that the hearing provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., are inapplicable to revocation hearings. Hiatt v. Compagna, 5 Cir., 1949, 178 F.2d 42, 46, affirmed 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, rehearing denied 340 U.S. 907, 71 S.Ct. 277, 95 L.Ed. 656.

■ In construing a similar District of Columbia statute, the Court of Appeals pointed out that "No constitutional right is involved, as parole is a matter of grace", and construed "an opportunity to appear" before the Parole Board as "an effective appearance," including "the presence of counsel if the prisoner so elects, and the receipt of testimony if he has testimony to present." Fleming v. Tate, 1946, 81 U.S.App.D.C. 205, 206, 156 F.2d 848, 849. An effective appearance would also require that the prisoner have reasonable notice of the alleged violation or violations of parole or conditional release upon which the Board relies for the proposed revocation. If the prisoner elects to appear without counsel, he should be given a reasonable opportunity to present his side of the matter to the Board. There is no duty to appoint counsel. Fleming v. Tate, supra.

In the instant case, the hearing was held before an examiner designated by the Board, in accordance with 18 U.S.C. § 4207, and reported by a stenographer. No formal charges or other written notice of the alleged violations of conditional release was served on petitioner at any time; but, as shown by the petition for writ of habeas corpus herein, filed January 6, ten days before the revocation hearing, the petitioner, even prior to his arrest, had notice of the violations upon which the warrant was to be based. Petitioner stated therein that on December 10, 1955, he was called into the office of his parole officer, Mr. Cassidy, who informed him that he was having petitioner's conditional release revoked for "associating with criminals, by writting (sic) to inmates in the penitentiary," and that Cassidy particularly referred to three postcards mailed from New York City to three prisoners at Atlanta on or about October 30, 1955, signed "Elane." The petitioner's testimony at the revocation hearing indicates that he was fully advised as to the violations for which revocation was sought. He testified that Mr. Cassidy on August 25, 1955, discussed with him his writing to Wilbert Green at Atlanta Penitentiary, and that "Mr. Cassidy sat down on the 10th of December and talked it over from end to end," after petitioner had been instructed in a letter from Mr. Bennett, Director of the Bureau of Prisons, to stop writing to inmates at Atlanta.

When advised by the examiner at the beginning of the revocation hearing that he was charged with violating his conditional release by writing to inmates at Atlanta, using an alias, after he had been warned not to do so, petitioner admitted that he had written Wilbert Green prior to August 25 and that, after discussing this with his parole officer, Mr. Cassidy, he had had the three postcards sent. He attempted to justify his writing Green on the ground that Green was his adopted son, although he had failed to give proof of the adoption to Mr. Cassidy when asked to do so. He gave no reason for communicating with the other two inmates.

Petitioner did not contend that he was unaware of the violations to be considered at the hearing, admitted the charges, but took the position that the written communications sent to prisoners at Atlanta did not constitute a violation of his conditional release. When asked if he had had a full opportunity to present his side of the matter, he presented nothing further which was pertinent to the inquiry. Although in his testimony he referred to his attorney, at no time did he request that counsel be present at the hearing. On the contrary, as stated in his petition for habeas corpus, filed before the hearing, he again indicated at the revocation hearing that he did not wish to have the hearing before the examiner and preferred to take the matter up with the court. It should be pointed out that petitioner is an experienced long time felony offender.

█ It is evident from the transcript of the revocation hearing that the petitioner was given an effective "opportunity to appear", in full compliance with § 4207. This leaves for determination the question whether the Board of Parole acted capriciously and arbitrarily in revoking the petitioner's conditional release.

Among the conditions upon which conditional release had been granted, as evidenced by a certificate signed by petitioner before release, are:

"12. That I will not associate with persons having a criminal background, bad reputation, or those engaged in questionable occupations",

and further—

"14. I understand that my continuance under supervision rests entirely in the discretion of the United States Board of Parole and that if I do not demonstrate capacity and willingness to fulfill the obligations of a law-abiding citizen, or if my continuance under supervision becomes incompatible with the welfare of society, I may be retaken on a warrant

issued by the Board of Parole and re-imprisoned pending a hearing to determine if my conditional release should be revoked."

Mr. Cassidy testified at the hearing on the petition that he recommended revocation of petitioner's conditional release for violation of these two conditions, when petitioner continued to communicate with inmates after having been warned not to do so.

At the hearing before this court petitioner admitted that he sent two letters to Wilbert William Albert Green, a prisoner at Atlanta Penitentiary, a handwritten letter postmarked July 20, 1955, and a typed letter dated July 22, 1955, both signed "James H. Hicks", the name of Green's uncle, who was on Green's approved correspondence list. He admitted that he was warned by Mr. Cassidy not to endeavor to communicate further with inmates at Atlanta. He admitted that thereafter he caused to be mailed from New York City three postcards, postmarked October 30, 1955, and addressed to Green, William H. Ward, and Curtis W. Sibby, all prisoners at Atlanta. Petitioner testified that two of the cards at his direction were signed "Elane."

Although the handwriting varies somewhat on the handwritten letter and the three cards, all of it corresponds with some part of the erratic handwriting of petitioner in his petition herein; and it was recognized by the authorities at Atlanta as Moore's writing.

■ "Associate" is defined as "to join or unite as a friend, companion, partner or confederate * * * to unite in company; to keep company * * * to unite in action; to join for a common purpose." [1] Although commonly it would not be used to include written communications with another, this court holds that, as used in Condition 12, "associate" can reasonably be construed to include such communications. The purpose of Condition 12 is to eliminate the prisoner's contacts with persons having a criminal record during the period of his conditional release. The parole officer necessarily must have discretion in supervising such contacts, social and otherwise, written as well as in person.

The communications in this case, particularly the postcards,[2] show literally an attempt to "join or unite as a friend, companion, partner, or confederate," or "to unite in action; to join for a common purpose." The parole officer had reason to suspect that they were intended to convey some meaning other than that which appeared on the surface.

Petitioner, who had recently been confined at Atlanta, knew that prisoners are permitted to receive mail only from persons on an approved correspondence list, whose criminal record has been investigated. There is no doubt that his use of the aliases, "James H. Hicks" and "Elane", and the mailing of the postcards from New York were attempts to conceal the identity of the correspondent and to circumvent the mail regulations at Atlanta. There is reason to believe the purported adoption of Green, by means of a handwritten one-page, notarized statement signed by petitioner, was an attempt to place himself within the class of near relatives permitted to correspond with the inmate. His statements to the parole officer suggesting that Green was his illegitimate son were without foundation, as Green is the legitimate son of William Green and Marie Hicks, as shown by his birth certificate and testified by Green's aunt, Dorothy Hicks.

1. Webster's New International Dictionary, Second Ed., Unabridged.

2. The card to Wilbert W. Green reads:
"We wish you was here take good cair of yourself and write soon. Your Aunt Mabel and all—sends love—Now is the time for your cooperation."
The card to Curtis W. Sibby:
"Kindly tell your mother to work with office. She is not cooperating with us—all the family is well and Sends love. Write Very Soon. Your friend—Elane"
The card to William H. Ward:
"Ask Mrs. Smith to cooperate with my office. I have written to her three times But no answer—take good Cair of your Self—Frind, Elane"

■ Petitioner by his actions prior to revocation, his contemptuous attitude, and his disregard of his parole officer's supervision and the mail regulations of Atlanta Penitentiary, amply demonstrated that he was not willing to cooperate with the parole officer or to fulfill his obligations as a law-abiding citizen. Hence, the Parole Board did not act arbitrarily, but upon reasonable cause in revoking petitioner's conditional release.

■ Petitioner stresses the fact that his attempts at communication with the Atlanta prisoners were thwarted by the prison authorities, and argues that as the result of their action there was no "association" by him with the inmates. This contention is without merit. No action by the authorities in Atlanta could in any wise affect the character of petitioner's completed acts. So far as he was concerned, his attempts at communication were accomplished violations of his conditional release.

For the foregoing reasons I will dismiss the petition and discharge the rule to show cause.