Cazada G. D. SAYLOR, Appellant,

v.

**UNITED STATES BOARD OF PAROLE,
R. A. Chappell, Chairman, et al.,**
Appellees.

No. 18623.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 17, 1964.

Decided April 1, 1965.

Bazelon, Chief Judge, dissented.

Mr. Blaine P. Friedlander (appointed by this court), Washington, D. C., for appellant.

Mr. James L. Kelley, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, *pro hac vice,* by special leave of court, with whom Asst. Atty. Gen. Burke Marshall, Messrs. David C. Acheson, U. S. Atty., and Harold H. Greene, Atty., Dept. of Justice, were on the brief, for appellees. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellees.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant claims he is required to serve only 6,000 days from and after his return as a parole violator to federal penitentiary on February 20, 1963, instead of 6,600 as computed by the Government. This issue was raised in the District Court by a civil complaint for declaratory relief against the members of the United States Board of Parole, which action was dismissed pursuant to a grant of defendants' motion for summary judgment. We affirm.

## I

In 1947 appellant began serving a term of 30 years by reason of a conviction in a federal court in North Carolina for bank robbery and related offenses. In 1959 he was released on parole. The Board of Parole, on May 25, 1961, issued an arrest warrant for parole violation, founded upon information that, among other things, state warrants had been issued in Kentucky for appellant's arrest for offenses against the law of that commonwealth and, further, that appellant had been arrested and released on bond on a Kentucky assault and battery charge. The warrant was transmitted to a U. S. Marshal in Lexington, Kentucky, by a letter which instructed the Marshal not to execute the warrant until the disposition of any state charges pending against appellant. According to the allegations of the complaint, appellant was arrested in Tennessee on June 28, 1961 by an FBI agent who told him that the arrest was being made under the parole violator warrant. Immediately following his arrest appellant was lodged in a county jail in Tennessee; and two days later he was turned over to the Tennessee authorities for prosecution on an assault charge.[1] Upon conviction thereof a few weeks later, appellant was sentenced on August 22, 1961, to a term of one to five years in Tennessee State Prison. Upon his release from this institution on February 20, 1963, appellant was taken into federal custody under the parole violator warrant, which bears an endorsement that it was executed on that date by the U. S. Marshal for the Middle District of Tennessee. Appellant was thereafter delivered to a federal prison in Atlanta where he is presently being held to complete service of his original 30-year sentence. As stated above, the only matter at issue between him and the federal authorities is whether the balance of that term runs from June 28, 1961, or February 20, 1963.[2]

## II

Appellant's position essentially is that, having been taken into custody on June 28, 1961 by reference to a parole violator warrant, he must in legal contemplation be taken to have been thereby returned to the custody of the Attorney General on that date, with the consequence that time began to run on his original sentence. He rests in this regard upon the following statutory language: "The unexpired term of imprisonment of [a prisoner for whom a parole violator warrant has been issued] shall begin to run from the date he is returned to the custody of the Attorney General under said warrant * * *."[3]

---

1. The complaint also alleges that, three days after his arrest (*i.e.*, July 1, 1961), appellant was told that he could not be freed on bond because he was being held as a parole violator. We, of course, know no more about this than is contained in the allegation. It does not seem strange, however, that the state authorities would, with the federal warrant still outstanding, tend to regard enlargement upon bail as a highly academic exercise from the prisoner's own standpoint.

2. Since, whichever way this issue is decided, appellant presumably will be in prison for several years to come, there is a question as to whether this complaint for declaratory relief is ripe for adjudication. To the extent, of course, that there are disputed questions of fact as to what happened in 1961, appellant should not be denied resolution of them until, say, 1975. The Government's eventual manifestation upon this appeal of its willingness to concede the crucial issue of fact as to whether appellant was arrested by reference to the parole violator warrant may well be thought to bring the question of ripeness to the fore again. In any 'event, the Government has at no time, either before or after its concession, urged that question upon us.

3. 18 U.S.C. § 4205. The full text is as follows:

   "A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the

For purposes of this appeal, we understand the Government now to have conceded that appellant was taken into custody on June 28, 1961, by a federal official acting under the outstanding parole violator warrant—a warrant which itself was founded in part upon the existence of asserted violations of state law. It is the Government's claim that a return to the custody of the Attorney General, within the meaning of Section 4205, is not automatically effected by the mere arrest of the parolee by federal agents; and that, rather, Congress may reasonably be thought to have accorded those agents at least a limited opportunity to turn their prisoner over to state authorities on pending state charges instead of pursuing the steps required to effectuate the resumption of his service in federal prison of his uncompleted term. Such a reading of the Congressional language, says the Government, is justified in the light of the ever-present consciousness within the national legislature of our dual system of state and federal offenses and of the Congressional purpose to encourage and to foster cooperative accommodation of what are occasionally, if not conflicting, at least concurrent claims. That this accommodation is a touchstone of statutory construction in this area, and that such accommodation need not, at least upon the demand of the law violator alone, entail any sacrifice by the federal government of its right to exact full satisfaction of the penalties imposed for crimes against it, seems to us to be the teaching of Jenkins v. Madigan, 211 F. 2d 904 (7th Cir.), cert. denied, 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664 (1954). We reach the same conclusion on the facts before us.[4]

We do not, in other words, believe it to be within either the letter or the spirit of the statutory scheme prescribed by Congress for the apprehension of federal parole violators to afford

---

prisoner was on parole shall not diminish the time he was sentenced to serve."

Appellant also points to § 4206:

"Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant for the retaking of a parole violator is delivered, shall execute such warrant by taking such prisoner and returning him to the custody of the Attorney General."

4. In Jenkins, the petitioner in habeas corpus had been sentenced in 1949 to four years' imprisonment upon conviction of a federal offense. Paroled July 10, 1950, he remained at liberty until arrested by FBI agents on December 9 of that year under a federal parole violator warrant issued the preceding month. The federal agents, upon apprehending petitioner, lodged him the same day for safekeeping in an Indiana county jail from which petitioner had escaped a few days earlier while awaiting transfer to a state prison after conviction of a state crime which apparently was committed while on federal parole. The Court of Appeals opinion recites that "Several days after December 9, 1950, petitioner was released" to the Indiana authorities and transported to state prison where, upon his release two years later, he was taken into custody again by federal agents on the authority of the parole violator warrant and returned to federal prison to complete his four-year sentence. (Emphasis supplied.)

In Jenkins, as here, the contention was that the arrest by federal agents on December 9, 1950, under the parole violator warrant operated to return the prisoner to the custody of the Attorney General for purposes of receiving credit upon his unexpired sentence. But the court rejected this contention, even though petitioner had been arrested under the parole violator warrant by federal agents and held as their prisoner for "several days" thereafter before being "released" to the state. It is clear that, even though petitioner was a fugitive from the Fort Wayne jail at the time he was picked up by the FBI agents, the latter were not required to turn him over to Indiana but could have sent him back to federal prison to complete service of his original sentence. Their decision under all the circumstances not to do the latter was an adjustment of the competing claims of federalism. The court's decision means not only that some leeway in point of time for consideration of the problem is available, but also that a decision to give the state priority does not commute the federal sentence.

the federal officers no latitude whatsoever to make such persons available for state prosecution and punishment, except at the price of seeing that punishment serve also as a satisfaction of the pending federal sentence. A conscious purpose on the part of Congress to pay that price would, it seems to us, have been spelled out more clearly if such purpose there was. In any event, we do not assume a policy determination to this effect in the absence of clearer evidence than now appears. We should suppose that Congress fully intended federal officers to have the authority exercised in this case. It seems to us that, upon arresting a federal parolee as a parole violator, the federal authorities should have some reasonable time and latitude in deciding whether to return him to the federal institution to serve the balance of his term or to surrender him to the local authorities for state prosecution. In following the second course, the federal officers would properly consider various factors, including the gravity of the state offense, and the fact of its occurrence during the period when the federal government had chosen to release the prisoner. Surely the state court is normally a better forum to determine whether a state crime has been committed than the Federal Parole Board; moreover, a release by the state authority, either after verdict or by dismissal of state proceedings, might in some cases lead to abandonment of federal parole revocation proceedings. Here the decision to yield to state authority was promptly made, and there was no prejudice to appellant. Viewed in this light, the federal election to defer to Tennessee is in the best tradition of promoting the comity which should obtain between state and nation. We do not think Congress intended such an election to confer a windfall upon the parole violator.

III

■■ At the argument of this appeal before us, it appeared that appellant was unrepresented by counsel in the District Court. This being a civil action, there was a discretion in the District Court to appoint counsel for appellant upon a showing of indigency. If the just disposition of this claim necessarily involved a hearing to resolve issues of fact, there might well be a persuasive showing as to the need for the appointment of counsel at the trial court level.

Appellant was, of course, represented throughout this appeal by competent and conscientious court-appointed counsel. The Government has conceded the critical issue of fact (*i. e.,* the making of the arrest under the parole violator warrant), towards the resolution of which any hearing in the District Court would be primarily directed. The question of law raised by that concession has been fully and ably argued to us by counsel for appellant. Having resolved it adversely to appellant, we see no necessity for prolonging this litigation.

Affirmed.

BAZELON, Chief Judge (dissenting):

There is no question that the appellant was "taken" under the authority of the violator warrant.[1] The only issue is whether the Attorney General's custody was resumed by this taking.[2]

As I read it, the majority concedes that this issue is not resolved by either the Parole Board's instructions to the arresting officers or the fact that formal execution of the warrant was delayed until appellant's release from the custody of Tennessee officials. But the majority gives conclusive effect to the State's assumption of custody within a "reasonable" period of time. Despite appearances that the Attorney General was responsible for appellant's confinement during the intervening period of custody, it finds

1. Federal officers have no authority to enforce State law. No authority for the arrest other than the warrant appears.

2. Under 18 U.S.C. § 4206, the warrant is executed "by taking [the] prisoner and returning him to the custody of the Attorney General."

in policies for the accommodation of Federal and State interests a justification for deeming that confinement to have been custody by the State.[3]

This fiction[4] might have some basis were an accommodation actually made *prior* to arrest or were it inevitable, under the circumstances of the case, that the State would seek to assume custody. But if the State's decision to seek custody occurs after arrest and confinement, it is hard to assert that custody during the interval is not the Attorney General's. As of that time, there would be no certainty that State charges would be pressed; yet the accused would have been confined, on Federal authority derived solely from the violator warrant.[5]

In Jenkins v. Madigan, on which the majority chiefly relies, there was certainty of State intent to assert claims to custody at the time of arrest on the parole violator warrant. The appellant there had just escaped from a county jail where he had begun serving a sentence for local crime. The arresting Federal officers returned him to the same jail. There was no ambiguity as to the reason for which he had been returned—to resume service of the State-imposed sentence. There was an existing Federal-State accommodation of claims to the prisoner's custody.

That certainty is lacking, however, on the present appeal. We do not know whether the Federal officers who arrested appellant in Tennessee knew of the Tennessee charges of which he was subsequently convicted.[6] We do not know if local authorities were seeking appellant prior to the day they served the local arrest warrant on him—allegedly two days after his apprehension. Appellant alleges that he was denied bail on the local charge at the insistence of Federal officers, who would not permit him to be enlarged because of the putative parole violation. All these matters suggest that the principal basis for appellant's custody may have been the alleged parole violation; and that there may have been no firm determination by State authorities to reduce appellant to custody prior to his arrest and detention by Federal officers. Thus it is not certain that appellant's detention in the local jail under authority of the parole violator warrant, if in fact it occurred, was in reality detention for State rather than Federal purposes.

If appellant can establish that Tennessee's determination to proceed against him for the local crime did not occur until after he had been placed in confinement, I

---

3. So far as I can determine, it is Federal and not State, interests that are accommodated when the Government proceeds in the manner here attempted. The decision made is that the Federal sentence shall not be resumed until State proceedings—and penalties—have lapsed. It is made by the United States Parole Board, for its own purposes and apparently without consultation with State officers. A wish expressed by the State tribunal at any subsequent sentencing that the sentence imposed run concurrently with the remaining Federal sentence need not and perhaps would not be respected. Compare 18 U.S.C. § 4085, by which the *State* might be given control over the question whether sentences were to be imposed on a concurrent or consecutive basis if the Attorney General first resumed custody under the violator warrant, and then immediately delivered the prisoner to the State.

4. Suppose, for example, that during the interval, appellant had escaped. Would he not be subject to prosecution as an escapee from Federal custody? 18 U.S.C. § 751; Tucker v. United States, 251 F. 2d 794 (9th Cir. 1958).

5. Suppose the situation in which the State is offered the opportunity to assume custody subsequent to arrest on a violator warrant, and declines. Or suppose that, as is alleged here, Federal officers procure a denial of bail pending trial on the State charges, and the accused is acquitted. There would seem to be little doubt in either case that the prisoner's custody for the entire period following his arrest was that of the Attorney General.

6. The parole violator warrant had been issued on the basis of allegations of criminal acts by the appellant in Kentucky.

think he must have the relief he seeks. In the realm of individual liberties, matters which in other contexts might seem mere technicalities assume decisional importance. However important Federal-State comity may be in the abstract as a basis for Government action, no such policy justifies creation of a situation in which the basis for a person's custody is in doubt, or made to hinge on some future contingency. Our traditions do not tolerate it.

The allegations of appellant's pro se complaint below, most liberally construed as they must be,[7] raise a colorable claim. Thus his motion for counsel ought to have been granted in the first instance. Our proper course now is to reverse and remand for appointment of counsel and hearing on the complaint.

---

**7.** Compare Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811 (1958); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957); Smith v. United States, 106 U.S.App.D.C. 169, 270 F.2d 921 (1959).