UNITED STATES of America ex rel.
Milton POLLACK, Petitioner,

v.

Paul D. McGINNIS, Commissioner of
Corrections, et al., Respondents.

No. 70 Civ. 4378.

United States District Court,
S. D. New York.

Aug. 26, 1971.

Victor Rabinowitz, Rabinowitz, Boudin & Standard, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., by Michael Colodner, Asst. Atty. Gen., New York City, for respondents.

MOTLEY, District Judge.

### OPINION

This proceeding originally came before this court on a *pro se* application for relief under 42 U.S.C. § 1983. Petitioner, at that time, claimed that he was being denied his constitutional rights by New York State in that he was being held in custody by the warden of Green Haven Prison although he had already served his maximum term of five years or 60 months imprisonment. To be sure of obtaining appropriate relief, petitioner, by his court appointed counsel, also filed a petition for a writ of habeas corpus. By an opinion and order dated October 16, 1970, this court ordered that petitioner first exhaust his state legal remedies before seeking relief in the federal courts. 28 U.S.C. § 2254(d). An accompanying order that petitioner be released on bail pending such exhaustion was vacated by the Second Circuit without prejudice to

renewal of any application after exhaustion of state remedies.

Petitioner has now exhausted his state remedies on both the bail issue and on the merits and reapplies to this court for habeas corpus relief and bail pending disposition of the former. This court's power to grant bail pending disposition of a petition for a writ of habeas corpus has been confirmed by the Supreme Court. In re Shuttlesworth, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548 (1962). But petitioner, having earned good time credit, was conditionally released by the State Parole Board on March 26, 1971. Conditional release, unlike parole, interrupts the service of the sentence and the remaining portion of the maximum is held in abeyance for a period equal to the unserved portion of the maximum or for a period of one year, whichever is greater. In petitioner's case, his maximum sentence, had he remained in custody, would have ended November 4, 1971, a period of less than one year and, therefore, he will remain on conditional release for one year, or until March 25, 1972, unless habeas corpus relief is now granted. The court takes no action on petitioner's bail application but now considers his petition for a writ of habeas corpus releasing him from the custody of the Board of Parole.

The first question is whether petitioner is in custody thus making habeas corpus the appropriate remedy for release from the custody of the Board of Parole. An inmate released on conditional release is under the supervision of the Board of Parole and the Board imposes such rules as it sees fit. Penal Law, McKinney's Consol.Laws, c. 40, § 70.40(1) (b). These rules are the same as those imposed on parolees. N.Y. C.R.R. § 155.15. Petitioner's conditional release conditions state that he is in the "custody" of the Board of Parole, that he is confined to New York City, and that he cannot leave without the written permission of his parole officer. He is prohibited from driving a car, possessing a driver's license, or having sexual

relations with anyone not his wife. Petitioner is separated.* Petitioner has also been required to waive his Fourth Amendment rights, thereby permitting his person, property and premises to be searched at any time. (General Rules Governing Parole attached to petitioner's affidavit of April 13, 1971). These conditions of parole are particularly onerous to a petitioner who is quite ill, who wishes to visit his mother in New Jersey, and who has his business contacts in New Jersey. A fuller description of the hardships visited upon petitioner by these parole conditions is contained in his affidavit filed with this court and dated April 13, 1971. Consequently, petitioner is not on "mere . . parole" as was the case in Dodd v. United States Marshal, 439 F.2d 774 at 775, n. 2 (2d Cir., 1971); he is, rather, living under "custodial" conditions clearly analogous to those described in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).[1] And, as petitioner has exhausted all available state court remedies and remains in "custody", although he has allegedly served the maximum time under his first sentence, his application for a writ of habeas corpus is properly before this court. Zaffarano v. Fitzpatrick, 404 F.2d 474, 478 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2130, 23 L.Ed.2d 766 (1969).

Petitioner was convicted of grand larceny in the first degree in the Supreme Court, New York County, and sentenced on December 14, 1964 to a term of 4–5 years, later reduced by the Appellate Division to a term of 2½ to 5 years. At the time of sentence, petitioner had served 2 months and 4 days in jail; consequently, the maximum expiration date of the sentence was October 11, 1969.

After serving 21 months and 24 days in jail (including the time spent prior to sentence), petitioner was released on parole on August 4, 1966. He remained on parole without incident for 16 months and 17 days or until December 21, 1967, at which time he committed an act of delinquency, the leaving of the state without permission. A parole violation warrant issued on April 11, 1968. The warrant, #2133, was issued for two other violations of parole, failing to report and changing his residence.[2] This first act of delinquency, upon being declared such on June 18, 1968, interrupted the running of petitioner's sentence under New York law until a hearing and determination by the Board of Parole or until petitioner was housed in a New York State Correctional Institution. New York Correction Law, McKinney's Consol. Laws, c. 43, § 218. Under New York law petitioner received credit for his 16 months and 17 days on parole. Consequently, petitioner was credited with a total of 38 months and 11 days on his original sentence of 60 months, leaving a total of 21 months and 19 days to be served on the sentence.

On or about April 19, 1968, the District Attorney of New York County secured the issuance of a warrant for petitioner's arrest. Then on April 23, 1968, petitioner surrendered to the District Attorney and was arraigned on a previously sealed indictment charging him with possession of stolen property.[3] Parole of-

---

* See fn., 2.

1. In Dodd v. United States Marshal, *supra,* petitioner was confined to a federal prison and was also on parole from a Washington State prison. The Second Circuit held that habeas corpus relief from the Washington conviction was improper because: 1) Washington had not filed a detainer with the federal custodians; 2) there was no indication that Washington wanted to restrict his freedom; and 3) Dodd did not suggest that the conditions of his parole were in any way restrictive. The court stated that Dodd's mere allegation of parole status was insufficient to find him "in custody" of the Washington officials.
In Jones v. Cunningham, *supra,* petitioner was under conditions which included not being allowed to drive a car, making periodic reports and allowing the officer to visit his home.

2. Court's Exhibit 1, at 2; page 3 of that exhibit states that petitioner is separated.

3. Court's Exhibit 1, at 6.

ficers had been actively searching for Pollack before they learned on April 23, 1968 that he had surrendered.[4] It is not clear whether petitioner knew of the parole violation warrant although the parole officer believed he knew.[5] In any event, his surrender was treated solely as a surrender on the District Attorney's warrant and not on the parole violation warrant. Had petitioner's surrender been treated also as one on the parole warrant, this case would not be before this court. Under New York law a parolee is credited with any time spent in custody if such custody is based on a surrender on a parole violation warrant. Penal Law § 70.40(3) (a).

In any case, bail was set at $35,000 on the new charge. Petitioner could not post bail. Even assuming petitioner could have posted the $35,000 bail, he would have been held in custody pursuant to the parole violation warrant. New York Correction Law § 216. That warrant was lodged as a detainer against petitioner's release on April 23, 1968, the day of his arraignment on the new charge.[6] There is no provision for bail from such a warrant, it can be lifted only by the Board of Parole. N.Y.C.R.R. 155.18.[7]

Petitioner made at least three applications for reduction of his $35,000 bail. The first made and denied in August, 1968 requested the judge to either reduce petitioner's bail to a nominal amount or exonerate bail. The petitioner was aware that he would not be free even if he posted bail, but he wished to post

bail so that his parole time would begin to run. (See affidavit of petitioner entitled "Overt Acts in Support", filed June 9, 1969 in Pollack v. Board of Parole of the State of New York, 69 Civ. 2972 (1969)). Additional motions to reduce bail were heard in the state court on February 26, 1969 and October 20, 1969. This last motion was granted to the extent that petitioner's bail was reduced to $25,000.[8] Apparently he could still not raise this sum.

Petitioner was, in fact, held in custody at the Manhattan House of Detention for Men (The Tombs), a New York City jail, from April 23, 1968 to October 30, 1969, a period of 18 months and 7 days. During this time, he was neither brought to trial on the pending charge nor granted a parole revocation hearing.

On June 12, 1968, the Board of Parole declared petitioner delinquent as of December 21, 1967, on the ground that on that date he had left the state without permission.[9] In August, 1969, while petioner was in custody in the City jail, he filed a petition for a writ of habeas corpus in this Court claiming that he had never received a hearing on his parole violation and, consequently, was unable to earn good time since his arrest for this violation. The Court (Palmieri, J.) denied relief on the ground that state remedies had not been exhausted. In the Matter of Milton Pollack v. Board of Parole of the State of New York (69 Civ. 2972 decided August 19, 1969). No parole revocation hearing was held until February 19, 1970, despite the provi-

---

4. *Ibid.*

5. *Ibid*, at 7.

6. Respondents' Supplemental Affidavit, at 2.

7. § 155.18(a) states that:
"Whenever a parolee is arrested on a felony charge and held for court action, a warrant for retaking and temporary detention shall be filed against him. Where such warrant is filed, for good cause shown or on its own motion, a majority of the entire board may lift the warrant and cancel delinquency pending the disposition of the charges by the court. . . . . ."

8. Court's Exhibit 2 sets forth Judge Culkin's denial of defendant's motion for reduction of bail on February 26, 1969. Court's Exhibit 3 is a copy of defendant's motion for a reduction of bail filed on October 20, 1969. At page 4, para. 10, of the affidavit attached to the moving papers it states that "neither the defendant nor his immediate family are in a position of posting bail in such amount [$35,000]." Court's Exhibit 4 at page 2, contains a notation signed by the Judge that reduced defendant's bail to $25,000.

9. Respondent's Brief of March 12, 1971, at 3.

sions of § 218 of the New York Correction Law, which directs the Parole Board to hold a revocation hearing "as soon as practicable", and mandates the Board to act on the charges of violation of parole "within a reasonable time." Petitioner did request a speedy parole revocation hearing from the Board by a letter dated June 14, 1968.[10]

On October 30, 1969, petitioner entered a plea of guilty to the charge of possessing stolen property. As a result, on that day, after 18 months and 7 days in the City jail, he was released on his own recognizance so he could go into the hospital for an operation pending sentence.

Thereafter, on January 14, 1970, the court imposed a sentence of 6 months on the new charge with credit for time served. Petitioner also received one month of earned good time credit on his six month sentence.[11] This meant that there was a period of 13 months and 7 days which petitioner had spent in the City jail over and above his sentence on the second charge.

At the time of the sentencing, the judge stated that he would write the Board of Parole recommending that petitioner be credited on his first sentence with this 13 months and 7 days spent in jail. The judge wrote such a letter on May 12, 1970.[12]

Upon leaving the courtroom after sentencing, petitioner was taken into custody by a parole officer and removed to Green Haven, a state prison.[13] On February 19, 1970, the Board of Parole held a delinquency hearing. It refused to credit petitioner with the excess time spent in the City jail as recommended on the ground that the charges had not been dismissed or petitioner acquitted. New York Penal Law § 70.40.[14] Petitioner was ordered to serve the remainder of

his sentence in Green Haven, i. e., 21 months and 19 days.

The claim here is that petitioner is entitled to have the 13 months and 7 days spent in the City jail, in excess of his second sentence, credited to his first sentence of 60 months. If he is so credited, his time spent in custody would be greatly in excess of his original sentence. His time spent in custody would be as follows:

1) 38 months and 11 days prior to his parole revocation;

2) 14 months and 12 days since his return to Green Haven; and

3) 13 months and 7 days spent in the City jail in excess of his second sentence.

Thus, if petitioner is entitled to credit for the 13 months and 7 days spent in the City jail, he has spent 66 months in custody on a charge carrying a maximum of 60 months and he would be entitled to be free of all parole conditions. If he is not so credited, he will remain in the custody of the Parole Board until March 25, 1972, or a total of 78 months on a 60 month sentence.

Therefore, the second question is whether petitioner's claim that he is entitled to be credited on his first sentence with the 13 months and 7 days spent in City jail in excess of his second sentence has any federal constitutional substance.

Petitioner presented this claim to the Court of Appeals of New York. There petitioner argued, inter alia, that the failure to credit him with time spent in the City jail in excess of his sentence deprived him of due process and equal protection of law. He claimed that the parole detainer warrant prevented him from being released on bail and, therefore, he was being held pursuant to the

---

10. See Habeas Petition filed in 69 Civ. 2972, *supra.*

11. At a hearing held in this case on October 16, 1970 it was stipulated that petitioner was credited with 150 days' jail time on the 6 month sentence imposed on him on January 14, 1970 and the sentence marked time served and expired. Steno-

graphic Record of proceedings of October 16, 1970.

12. Appendix A, See also transcript of resentence hearing at 41–43.

13. Petitioner's Brief at 3; Respondents' Supplemental Affidavit at 3.

14. Appendix B, Letter to Judge Gellinoff.

parole warrant. The respondents argued that petitioner had not been arrested and had not surrendered on the parole warrant and, therefore, was not entitled to be credited with time spent in the City jail. Pollack v. Commissioner of Corrections, 28 N.Y.2d 661, 320 N.Y.S.2d 529, 269 N.E.2d 197 (1971). The Court, in a one line opinion, denied petitioner relief on February 24, 1971. Pollack v. Commissioner of Corrections, *supra*. The opinion denied relief on the basis of the case of Simmons v. Oswald, 16 N.Y.2d 671, 261 N.Y.S.2d 297, 209 N.E.2d 288 (1965). That case, another one line opinion, without any detailing of the facts, affirmed the dismissal of an application to annul a determination of the Board of Parole which had refused to consider a certain period of time spent by applicant in a City jail as part of his original sentence. Petitioner's state claims thus seem foreclosed by the New York Court's decision and, as a review of the New York law will show, a prisoner in petitioner's situation is not entitled to credit for time spent in a city jail.

Under the statutory scheme in effect at the time of petitioner's first sentence, New York Correction Law § 218, the sentence of a prisoner on parole continues to run until the expiration of the maximum time to which he was sentenced, unless the running of the sentence is interrupted by a delinquency of which the prisoner is found to be guilty. Under that section, when there is cause to believe that a parolee has violated his parole, the Parole Board, "as soon as practicable", shall declare such prisoner to be delinquent, and the declaration of delinquency "shall interrupt such prisoner's sentence as of the date of such delinquency."

The section also provides that the interruption of a sentence shall continue "until the return of such prisoner to an institution under the jurisdiction of the commissioner of correction." Upon such return, the time still owed shall date from the delinquency regardless of the date of the declaration of delinquency.

The section further requires that the Board of Parole give the parolee a hearing "as soon as practicable." Such a hearing shall be either at "an institution under the jurisdiction of the state department of correction or at such other place as may be designated."

Finally, that statute provides that the Board of Parole shall act upon the charges within a reasonable time and, in its discretion, may require the prisoner to serve out in prison or such other institution the balance of the maximum term or any part thereof before again releasing the prisoner on parole.

Another New York statute, N.Y.Penal Law § 70.40, provides: 1) if a parolee is arrested or surrenders on a parole warrant; or, 2) if a parolee is acquitted on the new charge or it is dismissed, he shall receive credit on the first sentence for time spent in custody.

Therefore, under state law petitioner could not resume serving his original sentence until: 1) he had been returned to an institution under the jurisdiction of the New York State Commissioner of Corrections, or 2) after a declaration of delinquency and hearing thereon, he was ordered to serve the remainder of the sentence in a prison or some other institution, or 3) he was arrested or surrendered on the parole violation warrant, or 4) he was arrested and detained on the new charge and subsequently was acquitted or the charge was dismissed.

 As set forth above, had petitioner been able to raise bail, he would have remained in custody as there was a parole violation warrant lodged against him. There is no provision for bail from such a warrant; the warrant can only be lifted by the Board of Parole.[15] This warrant, issued 13 days prior to the unsealing of the indictment on the second crime, charged petitioner with a violation of parole. It was issued pursuant to Correction Law § 216 and authorized the "person in charge of any jail . . . to whom it is delivered to hold in temporary detention the parolee named there-

15. N.Y.C.R.R. § 155.18 quoted at fn. 7.

in. . . ." On the day petitioner was taken into custody, April 23, 1968, the warrant was lodged as a detainer against his release.[16] Once this warrant was lodged, petitioner could not legally have gone free even had he been able to make the $25,000 bail on the second charge. However, had petitioner been able to raise bail, under New York law, he would have received credit on his first sentence for the time spent in the City jail, since he would have been held pursuant to the parole violation warrant. Penal Law, § 70.40(3) (c). Petitioner, as stated previously, was aware of this and moved a number of times to reduce his bail so that he could post it and resume receiving credit on his original sentence. Consequently, had petitioner's bail been sufficiently reduced or if petitioner had been able to afford bail, he would now be free on the first charge, having received credit for the time in the City jail. In these circumstances, a clear violation of equal protection is presented. Those who can afford bail receive credit on their prior sentences, while those who cannot do not.

This case is not like the normal money bail situation. In this case the State keeps both the rich and poor in jail, but it allows the rich credit on their prior sentences. Such economic discrimination falls squarely within the protections of the Fourteenth Amendment. *Cf.* Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); Harper v. Virginia Board of Elec-

tions, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

■ The State also asserts that the petitioner is not entitled to the credit claimed because the Manhattan House of Detention is a New York City institution and not a New York State prison and, under Correction Law § 218, as construed by the highest court of the State, petitioner is not entitled to credit for the time spent in the City jail. People ex rel. Petite v. Follette, 24 N.Y.2d 60, 298 N.Y.S.2d 950, 246 N.E.2d 722 (1969).[17] While it is true that the Manhattan House of Detention is a City jail, the State has failed to set forth a constitutionally adequate reason as to why this different label on the front door of a state custodial institution should mean a different result under the facts of petitioner's case.

■■ In justification the State says that the Board of Parole had no jurisdiction over petitioner while he was in the City jail and, therefore, he could not resume the running of his sentence.[18] However, it is obvious that a state cannot compartmentalize itself so as to avoid the requirements of the Fourteenth Amendment. The Fourteenth Amendment applies to all subdivisions of the state. *Cf.* Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913). It is

16. Respondents' Supplemental Affidavit at 2.

17. In People ex rel. Petite v. Follette, *supra*, petitioner, a parole violator, was sentenced to 6 months in the Workhouse, a New York City jail, on a second charge. He claimed credit for this time on his first sentence which was denied. Held,

the Workhouse was not a State jail within the meaning of N.Y. Correction Law § 218. The facts of that case are thus distinguishable from the facts in this case.

18. Respondents' Memorandum of March 12, 1971, at 3.

a constitutional absurdity to argue that custody by a subdivision of the state is not custody by the state. The state cannot irrationally distinguish between one form of custody and another. *Cf.* In Re Gault, 387 U.S. 1, 27, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

It could be argued that city custody should be distinguished from custody in a state prison for the reason that petitioner would receive rehabilitation in a state prison. But this is belied by New York Penal Law § 70.40 which credits a parolee with City jail time if he is found not guilty on the second charge. Additionally, the issue presented is not what the Board of Parole could do during petitioner's custody in the City jail; it is what it was constitutionally required to do regarding the excess City jail time once a parole revocation hearing was held or petitioner was back in its custody.

If petitioner had been placed in pretrial detention in a State prison because the Tombs was overcrowded (as many prisoners were last summer following riots in the Tombs) under the State's interpretation petitioner would have been entitled to credit on his first sentence simply because of this fortuitous event.

In short, the State has failed to suggest any rational basis for distinguishing between custody in a city jail as opposed to a state prison or for crediting parolees who land in state prisons as opposed to city jails before their parole revocation hearings. Therefore, the reasons assigned by the State for failing to credit petitioner with time spent in the City jail are arbitrary and unreasonable and a denial of due process. *Cf.* Shapiro v. Thompson, 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Gulf Colorado & Santa Fe Ry. Co. v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666 (1896); Rothstein v. Wyman, 303 F.Supp. 339, 345 (S.D.N.Y.1969).

The State contends that the time spent in the Tombs in excess of the sentence actually imposed upon the second charge may be viewed only as a part of the second sentence since the sentencing judge was aware of the fact that petitioner had been incarcerated for 18 months awaiting trial on the second charge and took this into consideration in imposing sentence. The fact is petitioner was sentenced to six months on the second charge. Although the sentencing judge could have sentenced petitioner to the eighteen months he had served, he did not do so. This crucial fact is clearly supported by the judgment of conviction and the letter of the sentencing judge to the Board of Parole recommending that petitioner be credited with the excess time on his first sentence.

Petitioner is, thus, entitled to receive credit on his first sentence for the 13 months and 7 days spent in the City jail. His first sentence, therefore, has expired and he is being detained illegally.

The writ of habeas corpus is granted and petitioner is freed from the custody of the Board of Parole. Submit Order.

### APPENDIX A

DRAFT
5/12/70

Hon. Russell G. Oswald
Chairman of the Board of
 Parole of the State of New
 York
2 University Place
Albany, New York 12203

> Re: Inmate Milton Pollack
> No. 14861
> Greenhaven Prison

Dear Mr. Oswald:

Please be advised that in regard to the sentence of six months imposed by me on Milton Pollack on January 14, 1970 on his plea of guilty under Indictment No. 368/1968 in the Supreme Court of New

York County, it was and is my intention to recommend to the State Parole Board that Mr. Pollack's present parole obligation be credited with whatever balance of jail time Mr. Pollack accrued in excess of his sentence of six months prior to disposition of the aforesaid indictment.

Very truly yours,

Above draft approved:

## APPENDIX B

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
BOARD OF PAROLE
ALBANY

May 25, 1970

Hon. Abraham J. Gellinoff
Justice
Supreme Court of the State
 of New York
New York County Court House
New York, New York

RE: Milton Pollack
 Green Haven Prison 14861

Dear Justice Gellinoff:

Thank you for your letter recommending that Mr. Pollack be credited with jail time in excess of his six month sentence.

I regret that under the Penal Law we are unable to credit him with said time. He would be entitled to such credit in the event the charge which resulted in his sentence by you had been disposed of by dismissal or acquittal. However, in view of your recommendation herein, we are submitting this case to the entire Board of Parole at its next meeting for reconsideration of the decision by the Board to hold Mr. Pollack until the maximum expiration of his term.

Very truly yours,

(s) Russell G. Oswald

RUSSELL G. OSWALD
CHAIRMAN