**Paul D. McGINNIS, Commissioner of Correction, et al., Respondents-Appellants,**

v.

**UNITED STATES ex rel. Milton POLLACK, Petitioner-Appellee.**

**No. 268, Docket 71-1874.**

United States Court of Appeals, Second Circuit.

Argued Nov. 11, 1971.

Decided Dec. 2, 1971.

Michael Colodner, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondents-appellants.

Victor Rabinowitz, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for petitioner-appellee.

Before KAUFMAN and MANSFIELD, Circuit Judges, and LEVET, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Milton Pollack commenced an action *pro se* under 42 U.S.C. § 1983, in effect seeking a recomputation of his maximum release date. After counsel was assigned, a petition for a writ of *habeas corpus* was also filed. Judge Motley, after a hearing, held that the action was properly one for *habeas corpus* relief and withheld consideration of the merits of the petition pending an exhaustion of state remedies pursuant to 28 U.S.C. § 2254(b). When state procedures proved unavailing, Pollack renewed his application, and Judge Motley granted the writ, 337 F.Supp. 1220.

Pollack was taken into custody on October 10, 1964, on a charge of grand larceny and later was convicted in the Supreme Court, New York County, and sentenced to a term of 4 to 5 years. The Appellate Division subsequently reduced the term to 2½ to 5 years. Pollack was paroled on August 4, 1966. On April 11, 1968, a parole warrant was issued charging Pollack with violations of the conditions of his parole dating back to 1967. On April 23, 1968, an indictment charging Pollack with felonious possession of stolen property was unsealed, and Pollack voluntarily surrendered to New York authorities the same day. Although bail was set at $35,000, even if Pollack had posted the bail on the new charge, the outstanding parole warrant would have been executed and Pollack detained by the Parole Board. Pollack made repeated motions to have his bail reduced so that he could post it from his limited resources and thus commence serving his time on the parole violation charge. He achieved a Pyrrhic victory, however, in having bail reduced to $25,000 which was still beyond his capacity to raise.

Pollack remained in New York City jails for eighteen months prior to trial on the new indictment. On October 30, 1969, he pleaded guilty but was released pending sentencing to undergo an operation at his own expense. On January 14, 1970, Pollack was sentenced by Justice Gellinoff of the New York State Supreme Court to six months, with credit

* Of the Southern District of New York, sitting by designation.

for time served. Justice Gellinoff, who was aware that Pollack already had served substantially more than six months on the possession charge, wrote to Russell Oswald Chairman of the Board of Parole of the State of New York, recommending that "Mr. Pollack's present parole obligation be credited with whatever balance of jail time Mr. Pollack accrued in excess of his sentence of six months prior to disposition of the aforesaid indictment."

After his sentencing on the April 1968 indictment, Pollack immediately was returned to state custody to satisfy his remaining obligation under the 1964 sentence. The Parole Board held a hearing on February 19, 1970, determined that Pollack had been delinquent as of December 21, 1967 and thus owed 21 months and nine days on the earlier sentence. It refused to credit him with the extra time served on the 1968 charge.[1]

In deciding not to credit Pollack with the extra time spent in custody on the 1968 charge, the Board of Parole relied on New York Penal Code § 70.40(3) (c) (McKinney 1967), which provides:

> Any time spent by a person in custody from the time of delinquency to the time service of the sentence resumes shall be credited against the term or maximum term of the interrupted sentence, provided:
> (i) that such custody was due to an arrest or surrender based upon the delinquency; or (ii) that such custody arose from an arrest on another charge, which culminated in a dismissal or an acquittal, and the

person was denied admission to bail pending disposition of such charge due to a warrant lodged against him because of such delinquency.

Pollack obviously came under neither of these provisos, because (1) he arbitrarily was detained on the new charge rather than on the parole violation charge, and (2) he pleaded guilty to the second charge.

We hold that the state, wholly apart from the statute, must credit the extra time served on the possessions charge against the time remaining under the 1964 sentence. This result is dictated by our recent decision in United States v. Gaines, 449 F.2d 143 (2 Cir. 1971). Gaines was convicted of a federal narcotics violation and released on bail pending sentencing. While on federal bail, he was arrested by New York authorities on robbery and murder charges and held first without bail and later in lieu of $7500 bail. He was brought before a federal court pursuant to a writ of *habeas corpus ad prosequendum*, sentenced to two years imprisonment on the narcotics charge, and returned to state custody. The state indictment was dismissed after new evidence was discovered. Upon being returned to federal authorities, Gaines contended that the time he spent in state custody in the absence of bail should be credited towards his federal sentence. We first felt constrained by 18 U.S.C. § 3568 which, like New York Penal Law § 70.40(3) (c), appeared to preclude such credit.[2] Gaines v. United States, 436 F.2d 1069, 1070 (2d Cir. 1970). The Supreme Court,

---

1. The time owed is computed by calculating the time period between the date at which delinquency began (December 21, 1967 in Pollack's case) and the maximum release date for the original sentence (October 9, 1969). Thus New York, unlike the federal government, allows credit for time served on parole until delinquency occurs. *Compare* New York Penal Law § 70.40(3) (a) *with* 18 U.S.C. § 4205. Time spent by a prisoner conditionally released, however, is not credited towards reduction of time to be served if a violation occurs. New York Penal Law § 70.40(1) (b). Therefore Pollack, who

was conditionally released before his writ was granted, would still have part of his sentence hanging over his head if we reversed, and thus the appeal is not moot.

2. 18 U.S.C. § 3568 provides in relevant part:
. . . The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody *in connection with the offense or acts for which the sentence was imposed*. . . . (Emphasis added.)

however, vacated that judgment and remanded *Gaines* for reconsideration. We quote at some length from our opinion on remand because of its obvious relevance to Pollack's claim:

Gaines was unable to enter into federal custody after bail was set in December 1969 solely because he lacked sufficient funds to post bond in the state court which held him in custody. The Supreme Court's decisions in Tate v. Short, 401 U.S. 395, [91 S.Ct. 668, 28 L.Ed.2d 130] (1971), and Williams v. Illinois, 399 U.S. 235, [90 S.Ct. 2018, 26 L.Ed.2d 586] (1970) indicate that a man should not be kept imprisoned solely because of his lack of wealth. If Gaines had had the money to post the state bond in December 1969 and then entered federal custody, he would now be eligible for his conditional release. *Gaines' lack of wealth has resulted in his having to serve a sentence that a richer man would not have had to serve, an impermissible discrimination according to Tate and Williams.* Accordingly, Gaines ought to be credited with the time spent in state custody after bail was set.

449 F.2d at 144 (emphasis added).

Similarly, if Pollack had been able to post bail on the 1968 charge, he immediately would have commenced serving the time owed under his 1964 conviction, and, even with the new six-month sentence appended, he long since would have completed service under both sentences.

We do not question the state statutory scheme which permits authorities to proceed on new charges, a scheme which will reduce the need for frequent changes of custody. The appellant's equal protection is not violated when he is incarcerated on a new charge rather than for the parole violation, but only after he has served more time on the two sentences merely because he had not been able to furnish bail. The state would be required to examine the situation retrospectively and to grant credit for time spent only in those rare instances when the accused still owed time for a prior sentence and served excessive time on a new sentence because he was found not guilty, or was sentenced to less time on the new charge than he had already served.

Our holding in no way permits a prisoner to "bank" time. If a prisoner should serve time before trial which ultimately exceeds his sentence, time which would have been avoided had he been able to post bail, he may not use that time to offset a sentence imposed for an offense committed in the future. *Cf., e. g.,* Meadows v. Blackwell, 433 F. 2d 1298 (5th Cir. 1970).

Nor do we undermine the vitality of cases which hold that the execution of parole violation warrants can be delayed pending the disposition of new charges and that time served on those new charges, if not in excess of the sentence, need not be credited against the uncompleted sentence. *See, e. g.,* Avellino v. United States, 330 F.2d 490 (2d Cir.), cert. denied, 379 U.S. 922, 85 S.Ct. 280, 13 L.Ed.2d 336, reh. denied, 379 U.S. 985, 85 S.Ct. 671, 13 L.Ed.2d 578 (1964); Robinson v. Willingham, 369 F.2d 688 (10th Cir. 1966); Jefferson v. Willingham, 366 F.2d 353 (10th Cir. 1966), cert. denied, 385 U.S. 1018, 87 S. Ct. 744, 17 L.Ed.2d 554 (1967); see also Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938). In the cited cases, prisoners sought to have their sentences run concurrently when the sentencing officials intended that they be served consecutively. Pollack found himself in an unfortunate plight which made it impossible for him to furnish bail. He should not be constrained, because of his unfortuitous circumstance, to serve a greater period in prison than even a consecutive running of his sentences would have required.

Affirmed.